OPINION OF THE COURT
Martin Evans, J.
Defendant, a loft tenant, here renews his application for attorneys’ fees after successfully defending an ejectment *370 action. At issue is the applicability of section 234 of the Real Property Law to an interim multiple dwelling occupant as defined by the “Loft Law” (Multiple Dwelling Law, § 280 et seq.)-
On November 1, 1979, defendant Moser took occupancy of the third floor loft at 19 Mercer Street under an agreement[1] with both the father of the deceased tenant of record, and the then landlord and plaintiff’s predecessor, M & A Freiman Realty Corp. At the expiration of the lease, defendant continued to pay rent to plaintiff’s predecessor and then to plaintiff. From at least the time of the termination of the sublease, defendant has been the prime tenant.
On June 21, 1982, the “Loft Law” was signed by the Governor and became immediately effective. (I. 1982, ch 349, Multiple Dwelling Law, art 7-C). The statute created a new category of building, the “interim multiple dwelling” (IMD) and was designed to grant residential status to de facto residential loft tenants such as defendant.[2] (See legislative findings, L 1982, ch 349, § 1.)
Plaintiff purchased the building in March, 1982, alleging that defendant’s residential use of the premises was improper.[3] The ejectment action was dismissed on procedural grounds by decision dated June 16, 1983.[4]
*371 Section 234 of the Real Property Law provides, in pertinent part: “Whenever a lease of residential property shall provide that in any action or summary proceeding the landlord may recover attorneys’ fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease * * * there shall be implied in such lease a covenant by the landlord to pay to the tenant the reasonable attorneys’ fees and/or expenses incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease or in the successful defense of any action or summary proceeding commenced by the landlord against the tenant arising out of the lease, and an agreement that such fees and expenses may be recovered”. In short, the statute guarantees to a successful tenant that which the lease assures a successful landlord. The implied covenant, imposing on a landlord the reciprocal duty to compensate a tenant for attorneys’ fees, was intended to effect mutuality in housing litigation, and to redress the inequality of bargaining power in the landlord-tenant relationship.
Defendant’s lease contained such a provision guaranteeing the recovery of attorneys’ fees by the successful landlord. Plaintiff argues, however, that since defendant’s lease had expired at the time the action was brought, defendant’s possessory interest in the premises did not arise out of the lease but emanated solely from the provisions of the Loft Law. Since the Loft Law contains no specific provisions providing for reimbursement of attorneys’ fees, plaintiff argues, defendant is not entitled to the relief sought. Plaintiff’s analysis is faulty. It is well-settled law that lease provisions permitting recovery of attorneys’ fees, such as those at issue here, are among those provisions which carry over into a statutory tenancy. (Barrow Realty Corp. v Village Brewery Rest., 272 App Div 262; Deary v Keith, 68 Misc 2d 110 [lease provisions obligating *372 tenants to reimburse landlords’ attorneys’ fees held applicable to statutory rent control tenants].)
Moreover, the Loft Law provides (Multiple Dwelling Law, § 286, subd 11): “Residential occupants qualified for protection pursuant to this article shall be afforded the protections available to residential tenants pursuant to the real property law and the real property actions and proceedings law.” Since section 234 of the Real Property Law permits, in some circumstances, a successful tenant to recover attorneys’ fees, there is no reason why a loft tenant should be denied relief clearly anticipated by both the Loft Law and the Real Property Law.
Plaintiff also contends that section 234 of the Real Property Law pertains only to a lease of residential property, and that because defendant’s expired lease limited occupancy to use as an “artist’s studio and workshop”, the lease was commercial and not subject to section 234 of the Real Property Law. Plaintiff’s reasoning begs the question. First, it ignores the clear legislative intent of both statutes and the necessity that they be read in pari materia. Second, it should not be determinative that the lease is commercial in form. (See Taylor v Haddad Corp., 118 Misc 2d 253.) Where the intent of the parties, or the effect of the lease or of applicable law, was to create or accede to a residential use, the attorneys’ fee recovery clause becomes a reciprocal, mutual obligation.
Plaintiff argues that, in the event defendant is found entitled to recover attorneys’ fees, such recovery should be denied as to a prior motion to disqualify defendant’s counsel, because that motion was brought “in good faith”. While in the past it has been suggested that a good-faith standard should be applied (Duane Thomas Loft Tenants Assn. v Sylvan Lawrence Co., 117 Misc 2d 360) that reasoning has since been expressly rejected. (Nesbitt v New York City Conciliation & Appeals Bd., 121 Misc 2d 336.) “[W]here * * * statutory authority exists for the granting of fees, such fees should be awarded. A court should invoke its discretion to deny fees not in circumstances where good faith is demonstrated on the part of the losing party, but *373 rather where bad faith is established on the part of the successful party” (supra, p 340).
Plaintiff’s claim that defendant’s failure to produce a copy of the lease in his initial request for attorneys’ fees was a showing of bad faith is a non sequitur and is wholly unsupported. A motion to renew is technically intended to permit a party to submit additional evidence which did not exist or which was not available on the return of the original motion. However, upon a showing of merit, a movant may seek renewal to present additional evidence which existed at the time a prior motion was made or to supply defects in the proof. (2A Weinstein-Korn-Miller, NY Civ Prac, par 2221.03; see Webb & Knapp v United Cigar-Whelan Stores Corp., 276 App Div 583; Coonradt v Averill Park Cent. School Dist., 99 Misc 2d 1046.) The court has the inherent power to permit renewal where, through inadvertence, evidence may have been wanting and the substantial rights of others are not prejudiced. Defendant has, on this motion, supplied the additional evidence necessary to support his claim to recover attorneys’ fees (i.e., a copy of the lease containing the appropriate attorneys’ fees recovery clause), as specifically indicated by the court in its prior decision. A court hearing a fee application has the inherent power to consider evidence that a party has engaged in frivolous, unnecessary or wasteful litigation, or otherwise lacks bona fides. There is no such evidence here.
Plaintiff further contends that section 234 of the Real Property Law is inapplicable to the instant motion because that section applies only to awards of attorneys’ fees upon the “ultimate outcome” of a controversy. (Elkins v Cinera Realty, 61 AD2d 828.) Such “ultimate outcome” means a final determination, but need not be a determination on the merits.
The rule is intended to discourage unnecessary and premature litigation. (Elkins v Cinera Realty, supra; see Dowling v Yamashiro, 116 Misc 2d 86.) Particularly where the plaintiff may jret prevail on the merits, based on the original theory of his case, thereby entitling him to claim attorneys’ fees, an early grant of attorneys’ fees to the defendant would be only a pyrrhic victory.
*374 The situation here is clearly distinguishable from that in Elkins (supra). In Elkins, the landlord had commenced, seriatim, a total of three summary proceedings. The first two were dismissed without prejudice: the first, because the landlord failed to appear; and the second, because the petition had not been properly verified. The court denied the application for attorneys’ fees because the third summary proceeding had already been commenced on the same theory; since the controversy had not yet been finally determined, the tenant’s application for attorneys’ fees was premature.
In contrast, plaintiff here is legally incapable of reviving the ejectment action at issue. Although plaintiff claims that he intends to continue litigating against defendant until his possessory interests are determined, plaintiff may not do so in an action for ejectment or a holdover proceeding based on an improper use theory, where the improper use alleged is residential use. The Loft Law provides (Multiple Dwelling Law, § 286, subd 1): “1. It shall not be a ground for an action or proceeding to recover possession of a unit occupied by a residential occupant qualified for the protection of this article that the occupancy of the unit is illegal or in violation of provisions of the tenant’s lease or rental agreement because a residential certificate of occupancy has not been issued for the building, or because residential occupancy is not permitted by the lease or rental agreement.” The clear intent of the Loft Law was thus to prevent plaintiff from maintaining any action based on the theory upon which the instant action was based. Since residential occupancy per se cannot be the predicate for the landlord’s action for possession, a fortiori, the instant underlying ejectment action cannot be revived even if plaintiff were now to effect proper service.[5] It is obvious that this court’s dismissal of the ejectment action constituted a final determination in favor of defendant tenant.
*375 Defendant tenant has demonstrated his entitlement to attorneys’ fees. His attorney has submitted an affirmation itemizing the work performed and the time spent on defendant’s behalf. He requested attorneys’ fees in the aggregate amount of $4,124.[6] However, plaintiff, in his moving papers, has objected to the amount claimed and the services performed. There is a question of fact as to the just and reasonable value of the attorney’s services. That question must be determined at a hearing unless the parties stipulate otherwise.

. In a letter from prime tenant’s agent to M & A Freiman Realty Corp., the occupancy was referred to as an “assignment” that would terminate in December, 1980. However, M & A Freiman’s letter of approval to Moser stated that the occupancy was a “sublet” and would terminate on January 1, 1981. In the original lease, the stated termination date was January 31, 1981.

. Although article 7-C of the Multiple Dwelling Law became effective on June 21, 1982, thereby protecting defendant, the landlord did not register 19 Mercer Street with the Loft Board until November, 1982. In a prior unrelated proceeding, the premises were found to constitute an interim multiple dwelling from the time the law took effect. [Feierstein v Mullan, NYLJ, Oct. 25, 1983, p 7, col 1.)

. Testimony of witnesses in an unrelated proceeding [Feierstein v Mullan, NYLJ, Oct. 25, 1983, p 7, col 1) disclosed that Feierstein occupied the fifth floor of 19 Mercer Street as a tenant from 1975 to March, 1982, the date on which Feierstein bought the building. This evidence was corroborated by Feierstein’s use of the 19 Mercer Street address on his voter registration and his income tax returns. Therefore, it would appear that Feierstein was in a position to know that Moser was a residential occupant of the third floor at the time he purchased the building. Yet, plaintiff continued to accept rent from the defendant for a period of eight months prior to commencing the ejectment action. Indeed, a prior holdover proceeding brought by plaintiff against defendant was dismissed on the court’s finding that plaintiff had accepted rent from defendant. [Feierstein v Moser, Civ Ct, NY County, Part 52, L & T index No. 85042/82, Sept. 22, 1982.) The circumstances suggest, at the very least, that plaintiff may have knowingly assented to defendant’s residential occupancy and waived objection to it.

. Defendant moved to dismiss on the ground that the summons had been improperly served. A traverse hearing was held before a referee, who concluded that service was jurisdictionally defective. In his motion to confirm the referee’s report, defendant tenant also sought an award of attorneys’ fees pursuant to section 234 of the Real Property Law. *371 This court (M. Evans, J.; June 16, 1983) confirmed the report of the referee and dismissed the action but denied attorneys’ fees, in the absence of proof of entitlement (e.g., a copy of the parties’ lease including language bringing it under the purview of section 234 of the Real Property Law).

. Plaintiff could, however, maintain an action for possession of the premises based on a permissible, different theory (e.g., nonpayment of rent or illegal use, not including residential occupancy), provided that landlord is in compliance with the requirements of the Loft Law (Multiple Dwelling Law, § 280 et seq.); such an action would not be the continuation of this action. It would be the commencement of an entirely new action based on a completely different theory, arising from a different set of operative facts; it would require service of an entirely new and different set of papers.

. This sum apparently does not reflect fees or disbursements on the instant motion, and obviously does not reflect fees on any future proceedings. The hearing is required to determine the value of all of the tenant’s attorneys’ fees reasonably incurred in this proceeding as well as the underlying action.