■ KIPS BAY TOWERS ASSOCIATES, Appellant-Respondent, v Z. YUCEOGLU, Also Known as YUSIF Z. YUCEOGLU, et al., Respondents-Appellants.—Order, Supreme Court, New York County (Alfred M. Ascione, J.), entered September 15, 1986, which, *inter alia,* (1) directed plaintiff landlord to furnish defendants tenants, at their option, with a 1-, 2- or 3-year renewal lease at a rental in accordance with the rent guidelines for leases commencing on September 1, 1983, (2) granted the tenants' motion for summary judgment on their second counterclaim for counsel fees to the extent of severing such counterclaim and referring the question of the amount of such counsel fees to a Special Referee to hear and report with recommendations, (3) granted the landlord's cross motion for summary judgment on its fourth cause of action for unpaid rent to the extent of severing such cause of action and referring the question of the amount of such rent to a Special Referee to hear and report with recommendations, and (4) directed the tenants to pay the landlord $495.83 a month pending their receipt of a renewal lease, is modified, on the facts and the law, to provide that (1) the tenants' occupancy of the subject apartment between September 1, 1983 and August 31, 1986 is deemed to have been pursuant to a three-year lease providing for a rental of $545.41 a month, (2) the tenants' motion for summary judgment on their second counterclaim for counsel fees is denied, and, upon a search of the record, such counterclaim is dismissed, (3) the landlord's cross motion for summary judgment on its fourth cause of action for unpaid rent is granted to the extent of awarding judgment in the amount of $19,634.76, without interest, and otherwise affirmed, without costs.

The action is brought by a landlord and seeks, *inter alia,* a declaratory judgment that the tenants are not entitled to a renewal lease under the Rent Stabilization Law, the subject apartment not having been occupied by them as their primary residence. IAS correctly declared that the tenants are entitled to a renewal lease since the landlord did not give notice of its intention to renew or not to renew the lease between 150 and 120 days prior to the end of the lease term on August 31, 1983 *(Golub v Frank,* 65 NY2d 900; *Crow v 83rd St. Assocs.,* 68 NY2d 796; *525 Park Ave. Assocs. v De Hoyas,* 69 NY2d 692). IAS's order then proceeded to direct the landlord to furnish the tenants, at their option, with a 1-, 2- or 3-year renewal

lease, such lease to provide for a rental in accordance with the rent guidelines that were in effect for leases commencing on September 1, 1983. The order notes that the guidelines provided for a 10% increase for three-year leases, a 7% increase for two-year leases, and a 4% increase for one-year leases.

Given more than 20 years' occupancy of the apartment by the tenants, and not having been advised otherwise as to their preference, IAS should have simply assumed that the tenants would have opted for a three-year renewal term had a renewal lease been offered to them, as it should have been, and deemed the tenants' post-August 31, 1983 occupancy of the apartment to have been pursuant to a lease commencing on September 1, 1983, terminating on August 31, 1986, and providing for a total rental of $19,634.76. This figure is arrived at by taking the monthly rental provided for in the lease that expired on August 31, 1983 ($495.83), increasing that amount by the rent guideline in effect for three-year leases commencing on September 1, 1983 (10%), and multiplying the latter figure ($545.41) by the number of months of the renewal lease (36). We deny interest to the landlord on this sum because, having rejected the tenants' tender of rent out of concern that acceptance thereof might prejudice its claim that the tenants were not entitled to a renewal lease, the landlord waited three years before making a motion for permission to accept such payments without prejudice. We see no equities so strongly favoring the tenants as to warrant that the renewal lease commence prospectively, i.e. when tendered by the landlord, rather than upon the termination of the former lease (see, *Matter of Lewin v Conciliation & Appeals Bd.,* 88 AD2d 516, *affd* 57 NY2d 760).

Our affirmance of that part of IAS's order holding that the tenants are entitled to a renewal lease terminating, at the latest, on August 31, 1986, is not meant to suggest that the tenants are not entitled, or should not be deemed entitled, to a second renewal lease commencing on September 1, 1986 at a rental in accordance with the rent guidelines for leases commencing on that date. We note only that the question of whether the tenants are entitled to such a second renewal lease is a matter not raised by the pleadings.

We disagree with IAS's holding that the tenants are entitled to counsel fees under Real Property Law § 234 since the landlord would have been so entitled under paragraph 19 of the lease had it prevailed on the question of primary residence. Paragraph 19 of the lease permits the landlord to incur an expense "for the account of Tenant" by performing an act

that should be performed by the tenants under the lease, in which event the expense so incurred, including, but not limited to, attorney's fees, is to be deemed additional rent and paid on the first day of the calendar month following the incurring of such expense. Clearly, primary residence does not fall within this rubric. Rather, the provision seems intended to apply in situations where, for instance, a landlord incurs an expense because a tenant causes damage to the premises and, in violation of the lease, fails to make repairs *(see, Cuyler Realty Co. v Teneo Co.,* 196 App Div 440, *affd* 233 NY 647). Since the landlord would not have been able to recover counsel fees under paragraph 19 of the lease, the tenant cannot recover them under Real Property Law § 234. Concur —Kupferman, J. P., Ross, Asch, Rosenberger and Wallach, JJ.