Cɪᴇʀ Iɴᴅᴜsᴛʀɪᴇs Cᴏᴍᴘᴀɴʏ, Appellant, v Rᴀᴄʜᴇʟ Hᴇssᴇɴ et al., Respondents.

First Department, March 22, 1988

**APPEARANCES OF COUNSEL**

*Gary M. Rosenberg* of counsel *(Ronald E. Sternberg* with

him on the brief; *Rosenberg & Estis, P. C.,* attorneys), for appellant.

*Mitchell Shron* for respondents.

OPINION OF THE COURT

ELLERIN, J.

The issue on this appeal is whether a landlord who prevails in a nonprimary residence holdover proceeding is entitled to recover legal expenses from a tenant under a standard broad lease provision which holds the tenant responsible for attorneys' fees incurred by the landlord in legal proceedings precipitated by the tenant's breach of the lease.

In the underlying action, the landlord, Cier Industries, was awarded a final judgment of possession against the tenant, Hessen, on the ground that the residence in question was not being used by the tenant as her primary residence. The tenant had initially leased rent-stabilized apartment 9A at 80 Park Avenue on May 18, 1972 from the landlord's predecessor. The lease was renewed several times, with the most recent extension expiring on May 31, 1984.

Petitioner landlord timely served the respondent tenant with notice that it would not renew the lease and informed her that she was required to vacate the apartment at the end of the term because she was not using it as her primary residence. When respondent failed to vacate and continued in possession of the apartment, petitioner commenced the instant summary holdover proceeding in the Civil Court where the issue of the tenant's primary residence was litigated. After a lengthy trial, that court determined that the weight of the credible evidence established that the apartment was not the tenant's primary residence since she lived in Detroit, Michigan, and "had little contact with the subject apartment * * * other than an occasional visit". (That determination is not challenged on this appeal.)

Following its decision on the merits of the holdover proceeding, the trial court held a hearing to determine the landlord's entitlement to attorneys' fees. The landlord based its claim for legal fees on the lease provisions which provide that:

"If Tenant shall default in the performance of any covenant on Tenant's part to be performed by virtue of any provision in any article in this lease contained, Landlord may immediately, or at any time thereafter, without notice, perform the

same for the account of Tenant. If Landlord at any time is compelled to pay or elects to pay any sum of money, or do any act which will require the payment of any sum of money by reason of the failure of Tenant to comply with any provision hereof, *or, if landlord is compelled to incur any expense including reasonable attorney's fees in instituting, prosecuting and/or defending any action or proceeding instituted by reason of any default of tenant hereunder, the sum or sums so paid by Landlord with all interest, costs and damages, shall be deemed to be additional rent hereunder* and shall be due from Tenant to Landlord on the first day of the month following the incurring of such respective expenses." (Para 17; emphasis added.)

"Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Landlord the demised premises". (Para 19.)

The landlord's request for legal expenses was denied by the trial court on the ground that the failure to occupy an apartment as a primary residence is not a violation of the lease, but is instead a "violation" of the Rent Stabilization Law, and the right to attorneys' fees "is created solely by contractual terms".

A divided Appellate Term affirmed this determination, with Justice Ostrau dissenting. The majority adopted the reasoning of the Civil Court, holding that "[w]e think it was within the contemplation of the parties to reserve the attorney's fee provision for the ordinary eviction proceeding premised upon the tenant's failure to comply with a term of the *lease,* as opposed to those proceedings where the parties are, in essence, litigating their *statutory* rights under the Rent Stabilization Law and Code".

In his dissent, Justice Ostrau analyzed the problem from a different perspective. He noted that since the tenant did not occupy the apartment as her primary residence, she was not entitled to a renewal lease and, consequently, improperly held over, and "[t]o the extent that the tenant failed to surrender the premises upon the expiration of her lease, she was in breach of the lease and triggered the 'attorney's fee' provision thereof". Justice Ostrau also observed that a failure to enforce lease provisions requiring tenants to reimburse landlords for legal expenses incurred in successful nonprimary residence holdover proceedings would vitiate the important reciprocal protection afforded to tenants to recover legal expenses in the

successful defense of such proceedings pursuant to Real Property Law § 234 and that such reciprocal tenant's right constitutes an important deterrent to the commencement of specious nonprimary residence proceedings.

Since we agree with the dissenting Justice's analysis, we reverse.

As a general rule, attorneys' fees may not be recovered by the prevailing party from the loser, unless authorized by agreement between the parties or by statute or court rule. (*Matter of A. G. Ship Maintenance Corp. v Lezak*, 69 NY2d 1, 5; *Mighty Midgets v Centennial Ins. Co.*, 47 NY2d 12, 21-22.) In this case, the landlord predicates its right to recover attorneys' fees upon specific contractual provisions in the lease and our focus is directed to those provisions.

The attorneys' fee clause here at issue, like those in many leases which have become standard, provides that if the landlord is compelled to incur any expense, including reasonable attorneys' fees, in instituting, prosecuting, and/or defending any action or proceeding instituted by reason of any default of the tenant in performing a covenant of the lease, such expenses shall be due from the tenant to the landlord as additional rent. Accordingly, the tenant here would be obligated to pay the landlord's attorneys' fees upon a finding that the within proceedings were precipitated by the tenant's failure to perform a covenant of the lease.

Concededly, there is no express provision or covenant in this lease requiring the tenant to occupy the apartment as a primary residence and the tenant's failure to do so would not be a violation of the lease during its term. The question of the tenant's primary residence is, however, of critical significance with respect to the respective rights and obligations of the landlord and tenant at the time of the lease's expiration.

In the ordinary course, absent some statutory or other limitation, the landlord would be free to limit the tenancy to the term covered by the lease and, unless renewed, the tenant would be obliged to surrender possession of the premises at the conclusion of term as expressly provided in paragraph 19 of the lease. However, in the case of rent-stabilized apartments, as a consequence of the legislation enacted in response to the housing emergency which prevails, a landlord may not terminate a tenancy at the expiration of the lease, but, with limited exception, must offer a renewal lease to a rent-stabilized tenant. (*See,* Rent Stabilization Law [Administrative

Code of City of New York] § 26-511 [c] [4], [9]; Rent Stabilization Code [9 NYCRR] § 2524.1 [a].)

It is the exception that is particularly relevant to, and dispositive of, the instant matter. The very statute which authorizes regulation of rent-stabilized housing expressly exempts "from such regulation apartments not occupied by tenants as their primary residence". *(Matter of Ehrlich v New York City Conciliation & Appeals Bd.*, 67 NY2d 622, 624; McKinney's Uncons Laws of NY § 8625 [Emergency Tenant Protection Act of 1974 § 5; L 1974, ch 576, § 4, as amended].) Thus, the rights flowing from the rent stabilization laws, including that of lease renewal, are subject to the condition of the tenant's "primary residence". Where that condition does not exist, the tenant's rights are limited to the lease terms and the landlord is relieved of the regulatory obligation to offer the tenant a renewal lease (Rent Stabilization Code [9 NYCRR] § 2524.4 [c]).

In the instant case, since the tenant did not occupy the apartment as her primary residence, the statutory entitlement to a renewal lease did not arise and, upon expiration of the lease term, she was required, under the express covenant contained in paragraph 19, to surrender the premises. Her failure to do so constituted a breach of the lease necessitating the institution of legal proceedings and the incurring of expenses thereby which the landlord is entitled to recover under the terms of paragraph 17 of that lease.*

Provisions, similar to the one here at issue, which allow for the recovery of attorneys' fees by a landlord who prevails in a summary proceeding brought because of a tenant's breach of the lease, have long been held to be valid and enforceable. *(See, e.g., 379 Madison Ave. v Stuyvesant Co.*, 242 App Div 567, affd 268 NY 576; *N. V. Madison, Inc. v Saurwein*, 103 Misc 2d 996.) The implementation of that provision within the context of this "primary residence" summary proceeding is not only legally mandated but also has significant positive policy rami-

---

* A different result may ensue where the lease contains a provision more narrowly limiting the circumstances under which a landlord may recover attorneys' fees or legal expenses. The determination in any given case will necessarily depend upon the language and scope of the particular clause at issue. Moreover, there is a significant difference with respect to counsel fees when the issue of primary residence is preliminarily raised by way of a declaratory judgment action rather than in the context of a summary proceeding as in the instant case. *(Cf., Kips Bay Towers Assocs. v Yuceoglu,* 134 AD2d 164.)

fications consistent with the purpose and goals of the various regulations enacted with respect to rent-stabilized apartments.

The New York City Rent Stabilization Law, which was initially adopted in 1969 to regulate housing completed between February 1, 1947 and March 10, 1969, was a response to the crisis which then existed and continues to exist, in the shortage of affordable residential rental facilities in New York City. The law sought to address that crisis by putting a brake on runaway rent increases while at the same time providing some leeway to landlords in order to encourage the future construction of new housing accommodations. To accomplish this dual purpose the Rent Stabilization Law was intentionally designed to be a less onerous form of regulation than the Rent Control Law, and one of the basic and most significant components of the Rent Stabilization Law is its application only to premises used as the primary residence of the tenant. *(See, 8200 Realty Corp. v Lindsay,* 27 NY2d 124; *Sullivan v Brevard Assocs.,* 66 NY2d 489.) A tenant of a stabilized apartment who maintains a primary residence elsewhere, and also seeks to retain the stabilized apartment for convenience or for considerations of personal gain, is not one who is a victim of the housing crisis but may rather be said to be a contributing and exacerbating factor in the continuation of the critical shortage of affordable apartments. The aims of the Rent Stabilization Law are better served when such occupancy is discouraged by way of allowing a successful landlord to recover, when authorized by the terms of the lease, the legal fees and expenses necessarily incurred in bringing proceedings to establish the tenant's nonprimary use.

Perhaps of even greater significance, however, is the reciprocal right which flows from this construction of the lease provision regarding attorneys' fees. To redress the recognized inequality at the bargaining table between landlord and tenant, and to protect the public interest involved, the Legislature enacted Real Property Law § 234 to effect mutuality in landlord-tenant litigation. This statute provides that whenever a residential lease entitles a landlord to seek attorneys' fees, a reciprocal covenant is implied imposing upon the landlord a duty to compensate a successful tenant for attorneys' fees and expenses. *(See, College Props. v Bruce,* 122 Misc 2d 766, 768 [App Term, 1st Dept], *affd* 104 AD2d 1063; *119 Fifth Ave. Corp. v Berkhout,* 134 Misc 2d 963.)

Real Property Law § 234 is intended to discourage unneces-

sary litigation in this hotly contested and emotional field. *(See, Feierstein v Moser,* 124 Misc 2d 369.) With the litigation in the nonprimary residence area burgeoning, the intimidating effect of the availability of attorneys' fees to a successful tenant would constitute a significant restraint and important deterrent to the bringing of frivolous nonprimary residence proceedings by landlords. The important policy rationale underlying Real Property Law § 234 would be impaired were the landlord in this case to be denied its rights under the lease. We emphasize that a lease provision such as that in issue must similarly be construed to permit a tenant to recover legal expenses incurred in successfully defending a primary residence proceeding.

In denying the landlord's application for attorneys' fees in the instant case, the trial court did not reach the question of the amount of such fees nor the reasonableness of the monetary amounts claimed by the landlord. Therefore, a hearing is necessary on the contested issue of the reasonable value of the attorneys' services. *(See, Kumble v Windsor Plaza Co.,* 128 AD2d 425; *Feierstein v Moser, supra.)*

Accordingly, the order of the Supreme Court, Appellate Term, First Department (Parness, J. P., and Sandifer, J.; Ostrau, J., dissenting), entered January 8, 1987, which affirmed the order of the Civil Court, New York County (Brandveen, H. J.), entered September 17, 1985, which denied petitioner landlord's application for attorneys' fees in this summary proceeding in which landlord was awarded a final judgment of possession upon the ground that the tenant did not occupy the premises as her primary residence should be reversed, on the law, the application should be granted, and the case remanded to the Civil Court for a hearing to determine the reasonable value of the attorneys' fees that the landlord is entitled to recover, without costs.

MURPHY, P. J., KUPFERMAN and CARRO, JJ., concur.

Order, Appellate Term of the Supreme Court, First Department, entered on January 8, 1987, unanimously reversed, on the law, without costs and without disbursements, the application granted, and the case remanded to the Civil Court for a hearing to determine the reasonable value of the attorneys' fees that the landlord is entitled to recover.