*777 OPINION OF THE COURT
Simons, J.
The question submitted is whether the provisions of section 234 of the Real Property Law which permit successful tenants in landlord/tenant disputes to recover attorneys’ fees, may be applied in this proceeding involving a statutory tenant. We conclude that they may and therefore affirm.
I
In October of 1960, Edwin and Phyllis Condon executed a two-year lease for a seven-room apartment on Washington Square North in New York City. The lease was not renewed upon its expiration in 1962; at that time, the Condons became statutory tenants under the recently enacted local rent control laws (see, Local Emergency Housing Rent Control Act, added by L 1962, ch 21; New York City Rent and Rehabilitation Law, added by Local Laws, 1962, No. 20). After the death of her father in 1973, the Condons’ adult daughter, respondent Liza Condon, returned to the apartment to reside with her mother and upon Phyllis’ death in 1986, Liza became the statutory tenant (see, New York City Rent and Eviction Regulations, 9 NYCRR 2204.6 [d] [3] [i]).
In 1987, the owners of the Washington Square North property, petitioners Andrew Duell and Irene Duell as executors of the estate of Manny Duell, commenced a summary proceeding in New York City Civil Court to evict Condon on the grounds that the Washington Square apartment was not her primary residence. The court dismissed the petition after a hearing and held further that Condon was entitled to an award of attorneys’ fees pursuant to Real Property Law § 234. The parties stipulated to fees in the amount of $51,517.25 and judgment was entered accordingly.
Petitioners appealed the judgment contending that respondent, a statutory tenant who was never a party to the executed lease, was not entitled to fees under the Real Property Law. The Appellate Term, First Department, affirmed, as did the Appellate Division, following an appeal to that Court. The Appellate Division granted leave to appeal to this Court and certified the following question: "Was the order of the Appellate Term of the State of New York, as affirmed by this Court, properly made?”
*778 II
Real Property Law § 234 provides:
“Whenever a lease of residential property shall provide that in any action or summary proceeding the landlord may recover attorneys’ fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease * * * there shall be implied in such lease a covenant by the landlord to pay to the tenant the reasonable attorneys’ fees and/or expenses incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease or in the successful defense of any action or summary proceeding commenced by the landlord against the tenant arising out of the lease”.[1]
The 1960 lease executed by Edwin and Phyllis Condon contained a provision entitling the landlord to assess attorneys’ fees and expenses against the tenant. Petitioners contend, however, that respondent may not recover fees and expenses because (1) the provisions of the lease do not carry forward into the statutory tenancy of a tenant who was not a signatory to the lease; (2) the nonprimary residence litigation was not a proceeding “arising out of the lease”; and, even if those questions be answered affirmatively, (3) the provisions of Real Property Law § 234 may not be applied retroactively to a lease that was executed prior to the statutory enactment.
Preliminarily, because the parties rely on both rent-control and rent-stabilization decisions, it should be noted that those two schemes were enacted to address different problems and they endow landlords and tenants with distinct rights and obligations (see, Braschi v Stahl Assocs. Co., 74 NY2d 201, 210; Sullivan v Brevard Assocs., 66 NY2d 489, 492-494; see generally, Administrative Code of City of NY § 26-408, and 9 NYCRR part 2204 [rent control]; Administrative Code § 26-511 [b], and 9 NYCRR part 2524 [rent stabilization]). They permit evictions only under specific circumstances and define the residential landlord/tenant relationship in fundamentally dif *779 ferent ways. A tenant in rent-controlled premises has a right to continued occupancy, assuming the tenant has complied with the rent control laws, notwithstanding the expiration of the lease (Administrative Code § 26-408 [a]; 9 NYCRR 2204.1). The tenancy exists not by contract but by operation of law — it is a "statutory tenancy.” In contrast, assuming the right to continued occupancy, the nature of the rent-stabilized landlord/tenant relationship continues to be contractual in nature because the landlord of a rent-stabilized apartment must offer the tenant a renewal lease at the expiration of a term (Administrative Code § 26-511 [c] [4], [9]; 9 NYCRR 2524.1). It is the absence of a current lease in the rent-controlled statutory tenancy that gives rise to this dispute over the applicability of Real Property Law § 234.
A
Addressing petitioners’ contentions, we hold first that the attorneys’ fee clause contained in the lease executed in 1960 carried forward into the statutory tenancy of Edwin and Phyllis Condon. The New York City Rent and Eviction Regulations say so: "[t]he provisions of any lease or other rental agreement shall remain in force pursuant to the terms thereof, except insofar as those provisions are inconsistent with the Rent Law or these regulations” (9 NYCRR 2200.13; see also, former New York City Rent and Eviction Regulations § 15). Various courts have applied that provision to hold that when a lease expires and is followed by a statutory tenancy, the terms and conditions of the expired lease — other than the duration of the lease and the amount of rent, but including clauses providing for payment of litigation expenses — continue into the statutory tenancy (see, Barrow Realty Corp. v Village Brewery Rest., 272 App Div 262; see also, 207-17 W. 25th St. Co. v Blu-Strike Safety Razor Blade Co., 302 NY 624, 626, revg 277 App Div 93; Matter of Park E. Land Corp. v Finkelstein, 299 NY 70, 74; 74 NY Jur 2d, Landlord and Tenant, § 129, n 11).
Petitioners contend, however, that the term "tenant” as used within Real Property Law § 234 applies only to signatories and thus even if Edwin and Phyllis Condon were entitled to the benefit of the statute, Liza Condon is not because she did not sign the lease. This is so, they say, because the statutory benefit is grounded on the provisions of the "lease” and in their view, the term "tenant” is understood to mean a *780 signatory to a lease. They also rely on judicial authority which they assert denies the benefit of Real Property Law § 234 to nonsignatories.
When interpreting a statute, the words used by the Legislature are to be given their usual and commonly understood meaning unless the statute plainly indicates that a different meaning was intended (see, Matter of SIN, Inc. v Department of Fin., 71 NY2d 616, 620-621; Price v Price, 69 NY2d 8, 15-16). The word "tenant” is commonly understood to mean one who rightfully occupies and/or uses the premises of another (see, 17 Oxford English Dictionary 764 [2d ed 1989]; Black’s Law Dictionary 1314 [5th ed 1979]). To the extent that the Legislature’s concurrent usage of the terms "tenant” and "lease” creates an ambiguity as to the meaning of "tenant,” the statute must be construed to further the legislative intent and purpose (see, Nestor v McDowell, 81 NY2d 410, 414; Price v Price, 69 NY2d, at 16, supra; Ferres v City of New Rochelle, 68 NY2d 446, 451).
The overriding purpose of Real Property Law § 234 was to level the playing field between landlords and residential tenants, creating a mutual obligation that provides an incentive to resolve disputes quickly and without undue expense. The statute thus grants to the tenant the same benefit the lease imposes in favor of the landlord. An additional purpose, particularly relevant in cases in which the tenancy is governed by the emergency rent laws, is to discourage landlords from engaging in frivolous litigation in an effort to harass tenants, particularly tenants without the resources to resist legal action, into terminating legal occupancy (see, Mem of Senate Sponsor Harrison Goldin, Bill Jacket, L 1966, ch 286, at 1; Mem of NY St Dept of Social Welfare, op. cit., at 5; see also, Maplewood Mgt. v Best, 143 AD2d 978; Cier Indus. Co. v Hessen, 136 AD2d 145,150-151).
It would defeat the purpose of Real Property Law § 234 if "tenant” were construed to mean only signatories to the lease. A clause in the lease obligating a tenant to pay attorneys’ fees and/or expenses to the landlord continues into the statutory tenancy and binds a host of others who have not signed the lease (see, 9 NYCRR 2204.6 [d] [3] [i] [those succeeding to a statutory tenancy may include parents and offspring, in-laws and step-relatives, aunts and uncles, nieces and nephews, and other interdependent persons who have lived for two years with the statutory tenant]). If statutory tenants are bound to *781 pay the landlord’s fees and expenses — and they are (see, Greenberg v Coronet Props. Co., 167 AD2d 291; College Props. v Bruce, 122 Misc 2d 766, affd 104 AD2d 1063) — then to effectuate the legislative purpose the term "tenant” used within the statute must be read to include all statutory tenants, whether or not they signed the lease.
Indeed, this case is a perfect example of why the statute should be read to include nonsignatories to the lease. Liza Condon is a statutory tenant and pays a rent that has been controlled for three decades. Thus the landlords had an obvious incentive to terminate her tenancy. Though they lacked any substantial evidence that she lived elsewhere, they commenced the eviction proceedings against Condon based upon the claim that the Washington Square apartment was not her permanent residence. The defense of the legal proceeding, as they concede, cost respondent in excess of $51,000. Had petitioners prevailed on the merits, they would have been entitled to reimbursement from Condon for their legal expenses. It would seem, then, that these are precisely the circumstances the Legislature envisioned when they considered section 234 and authorized the courts to award fees and expenses to those in Condon’s position.
Petitioners also rely on several lower court decisions refusing to apply Real Property Law § 234 for the benefit of successful litigants who were not signatories to leases (see, East Four-Forty Assocs. v Ewell, 138 Misc 2d 235; 317 W. 77th v Pera, NYU, Apr. 3, 1990, at 26, col 1; Beth Israel Med. Ctr. v Power, NYU, Nov. 8, 1990, at 23, col 2). Those decisions are not persuasive, for two reasons. First, as several courts have recognized, the applicability of Real Property Law § 234 is not limited to the signatories to the lease but turns on the existence of a cognizable legal relationship between the parties (see, Greenberg v Coronet Props. Co., 167 AD2d 291, supra [a successor statutory tenant]; Feierstein v Moser, 124 Misc 2d 369 [a successor landlord as against a statutory tenant]; Mapama Corp. v Nadelson, 129 Misc 2d 816 [the assignee of a statutory tenant]; Kalb v River Point Towers Coop., 77 AD2d 541 [the administrator of the estate of a deceased tenant]). When a statutory tenancy exists, the landlord/tenant relationship continues by operation of law.
Second, the decisions cited by petitioners all involved disputes over rent-stabilized premises. Within the New York City rent stabilization scheme, the term "tenant” is narrowly *782 defined to include only a "person or persons named on a lease as lessee or lessees, or who is or are a party or parties to a rental agreement” (9 NYCRR 2520.6 [d]). Implicitly, the decisions in the rent stabilization cases hold that since the party seeking attorneys’ fees was not a tenant within the meaning of the Rent Stabilization Code, that party was not a tenant within the meaning of Real Property Law § 234. Although we do not pass on the correctness of those decisions, we note that they are distinguishable from the instant case, because the rent control law broadly defines a "tenant” as any person who is entitled to possession, use or occupancy of the premises (Administrative Code § 26-403 [m]).
B
Petitioners contend next that Real Property Law § 234 does not apply in this case because the eviction proceeding was based on a claim that the Washington Square property was not respondent’s primary residence and the lease does not contain a clause requiring the tenant to maintain the apartment as her primary residence. Thus, they maintain the litigation does not "arise out of’ the lease within the meaning of Real Property Law § 234.
The 1960 lease contained an express covenant by the tenant to quit and surrender the premises "[u]pan the expiration or other termination of the term of this lease.” Because this covenant to surrender the premises is not inconsistent with the rent control law or regulations, it is among those lease provisions that carried forward into the statutory tenancy (see, 9 NYCRR 2200.13). Upon the termination of the statutory tenancy, the tenant remains under the obligation to quit and surrender possession of the premises.
The New York City Rent and Rehabilitation Law does not apply to the housing accommodation unless it is occupied by the tenant as a primary residence (Administrative Code § 26-403 [e] [2] [i] [10]; New York City Rent and Eviction Regulations, 9 NYCRR 2200.2 [¶] [18]). When a tenant ceases to occupy the premises as a primary residence, the term of the statutory tenancy expires and the tenant is obligated by the covenant in the lease to quit and surrender the premises. Here, it was the tenant’s alleged breach of a covenant to quit the premises that caused the landlord to commence the non-primary residence proceeding to recover the premises. Accordingly, the landlord’s litigation arose out of the lease within *783 the meaning of Real Property Law § 234 (cf., Cier Indus. Co. v Hessen, supra, at 149; see also, Troy v Oberlander, 146 AD2d 460).
C
Finally, petitioners contend that even if Real Property Law §234 applies to nonsignatories, and nonprimary residence litigation is found to arise out of the lease, Real Property Law § 234 should not be applied retroactively to this lease because it was executed before the statute was enacted.
Whether a statute is to be applied prospectively or retroactively generally requires determination of legislative intent (see, Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443, 453; McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [b], [d]). When a statute creates a new right of action, it is presumed that the Legislature intended the statute to be applied prospectively only unless a contrary intent clearly appears (see, Jacobus v Colgate, 217 NY 235, 240-242). On the other hand, statutes that are remedial in nature may be applied retrospectively (see, Becker v Huss Co., 43 NY2d 527, 540). Though these maxims of statutory construction provide helpful guideposts, the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal (see, Becker v Huss Co., 43 NY2d, at 540-541, supra).
Petitioners contend that because there was no opportunity to renegotiate the terms and conditions of the expired lease before the attorneys’ fee provision was carried forward into the statutory tenancy, Real Property Law § 234 unfairly imposes an unnegotiated obligation on the landlord of rent-controlled premises which could remain in effect for years before the statutory tenancy terminates. We conclude, however, that the imposition of a mutual obligation into preexisting leases is exactly what the Legislature sought to accomplish by the statute.
The remedial nature of the Legislature’s action to equalize the power of landlords and tenants is evident from both the language of the statute as well as historical documents (see, Bill Jacket, L 1966, ch 286). Real Property Law § 234 contains no limitation, stating that its terms apply "[wjhenever a lease of residential property” includes an attorneys’ fees and expenses clause in favor of the landlord (emphasis supplied). Moreover, the memorandum of the sponsor of the bill states that the proposed statute would provide that "any lease giving *784 such a right [to recover fees and expenses] to the landlord shall be construed to give a similar right to the tenant”. (Mem of Senator Harrison Goldin, Bill Jacket, op. cit., at 1 [emphasis supplied].) It was intended, he said, that "by giving tenants the potential right to recover such legal expenses, the bill would act as a deterrent to overreaching practices by landlords who now rely upon their tenants’ inability to bear the cost of legal proceedings required to redress [the] landlord’s improper acts” (ibid, [emphasis supplied]). Moreover, the apparent legislative intent to apply the statute retroactively was recognized by those commenting on the proposed legislation; indeed they objected to the bill because it was retroactive (see, Mem of Commerce and Industry Assn of NY, Bill Jacket, op. cit., at 18).
Finally, we note that the statute, as originally enacted in 1966, applied only to New York City. At that time rent control had been in existence there for four years and doubtless many New York City leaseholds had become statutory tenancies during that period, as had the Condons’. The statute was enacted to correct an existing problem and there is no evidence that the Legislature intended statutory tenancies created between 1962 through 1966 to be exempt from its provisions. Because countless statutory tenants remained obligated under the preexisting attorneys’ fees provision in favor of the landlord and because the rent control scheme provides the landlord with an ever-increasing incentive to evict the statutory tenants, the remedial purpose of the statute would be ignored if the statute were applied only prospectively.
In sum, we hold that Real Property Law § 234 applies to a statutory tenant under the rent control law even if not a signatory to the lease, that the nonprimary residence proceeding arose out of the lease within the meaning of Real Property Law § 234, and that the statute applies retroactively to leases executed prior to the effective date of the statute.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.[2]
*785 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
Order affirmed, etc.

. As originally enacted, the statute applied only to residential properties in New York City. It was subsequently amended and now applies Statewide (see, L 1969, ch 297).

. In the order of the Appellate Division entered January 27, 1994 affirming Appellate Term, the matter was remanded to New York City Civil Court for the purpose of establishing the reasonable amount of attorneys’ fees and disbursements incurred by respondent in defending the appeal to the Appellate Division. Our disposition is without prejudice to respondent seeking attorneys’ fees and disbursements incurred in defense of the appeal to this Court on the remand to the Civil Court.