OPINION OF THE COURT
Debra Rose Samuels, J.
*805 Defendant’s motion to reargue so much of the court’s decision/ order entered herein on August 4, 2004 (the prior order), as denied partial summary judgment based on the second affirmative defense, is granted only to the extent of granting reargument. Upon reargument, the court adheres to its original decision.
Defendant is sued as guarantor of the lease in question. Defendant does not dispute that she entered into the guarantee agreement alleged by plaintiff. The second affirmative defense asserts, however, that her April 11, 2002 letter to plaintiff, which stated that she would not guarantee “any further lease time” after July 14, 2002, the expiration date of the lease, precludes any liability for use and occupancy or physical damage after that date.
By its terms, the guarantee was to “remain in full effect even if the Lease is renewed, changed or extended in any way.”
In arguing that the prior order resulted from the court’s misapprehension of existing law, defendant relies on 665-75 Eleventh Ave. Realty Corp. v Schlanger (265 AD2d 270 [1st Dept 1999]) and Levine v Segal (256 AD2d 199 [1st Dept 1998]). In both cases, the Court found, notwithstanding language similar to that quoted above, that the guarantor was not, in fact, liable for obligations incurred after the end of the term of the lease in connection with which the guarantee in question was executed.
Both are inapposite, however, as their facts distinguish them from this case.
In Levine, the Court held that where, as here, “a guaranteed contract has no definite time to run, an uncompensated guarantor may revoke and end its future liability by reasonable notice to the principal . . . Since defendant guarantor revoked her guarantee for her son’s rent stabilized lease during the first renewal period, and since the judgment upon which plaintiff landlord sued herarises exclusively out of unpaid rent from subsequent renewal periods, the Appellate Term properly granted defendant’s motion for summary judgment.” (256 AD2d at 200 [citations omitted].) In language emphasized by defendant on this motion, the Court added that the terms of such a guarantee “are to be strictly construed in favor of the private guarantor.” (Id.)
In 665-75 Eleventh Ave. Realty, the Court explained that the tenant for whose benefit the guarantee was made “remained as a month-to-month tenant after the last written lease extension and paid monthly rent at the rate of $8,000 for the months of *806 July, August and September 1995. Beginning in October 1995, [the tenant] failed to pay rent and thereafter a non-payment proceeding was commenced against [the tenant] claiming rents through June 1996.” (265 AD2d at 270.) On those facts, the Court found that the guarantor was not liable for the unpaid rent and/or use and occupancy, explaining that the “terms of the guaranty, which are to be strictly construed in favor of a private guarantor (see, Levine v Segal, 256 AD2d 199, 200), only create an obligation on the part of the guarantor as to ‘any renewal, change or extension of the Lease.’ Since a ‘guarantor should not be bound beyond the express terms of his guarantee’ (Wesselman v Engel Co., 309 NY 27, 30), and since it is undisputed that there was no written lease extension beyond June 30, 1995, the guaranty lapsed, releasing the defendant’s decedent from liability under the lease.” (Id. at 271.)
In this case, the use and occupancy and alleged property damage for which defendant seeks to avoid liability based on the second affirmative defense took place during a holdover period immediately following upon the expiration of the lease. That is very different from the context in which Levine was decided, where the plaintiff sought to recover from the guarantor unpaid rent accrued during a renewal period agreed to by the landlord after receiving notice of the guarantor’s revocation. It is likewise very different from the situation presented in 665-75 Eleventh Ave. Realty, where the plaintiff had permitted the tenant to remain in occupancy as a month-to-month tenant for several months after the last lease extension, so that the tenant was not holding over at the end of a guaranteed renewal lease, but rather failing to pay pursuant to a month-to-month tenancy voluntarily entered into by the plaintiff. The Court held that the terms of the guarantee, “strictly construed,” did not apply after the end of the last formal extension.
In this case, defendant guaranteed “the strict performance of and observance by Tenant of all the agreements, provisions and rules in the attached Lease.”
Paragraph 9 (A) of the lease specifies that “[y]ou [the tenant] will take good care of the apartment and will not permit or do any damage to it, except for damage which occurs through ordinary wear and tear. You will move out on or before the ending date of this lease and leave the Apartment in good order and in the same condition as it was when You first occupied it, except for ordinary wear and tear . . . .”
Paragraph 18 (A) specifies that “[y]ou must pay your rent until this Lease has ended. Thereafter, you must pay an equal *807 amount for what the law calls ‘use and occupancy’ until you actually move out.”*
Failure to comply with such lease obligations — even though the failure does not technically occur, as defendant puts it, until “the instant after the lease expires” — is undoubtedly a breach of the lease in question. (See Cier Indus. Co. v Hessen, 136 AD2d 145, 147 [1st Dept 1988] [landlord who prevailed in primary residence holdover proceeding was entitled to recover attorneys’ fees based on lease provision entitling it to attorneys’ fees incurred in “any action or proceeding instituted by reason of any default of tenant hereunder”].) Even though the lease did not obligate the tenant to occupy the apartment in question as her primary residence, her failure to vacate following the landlord’s termination of her tenancy on primary residence grounds found valid by the Court “constituted a breach of the lease.” (At 149.)
The obligations to move out at the end of the lease and to return the apartment undamaged were important terms of the lease. The risks that the tenant might not do either or both of those were thus among the risks that defendant agreed to assume in order to induce plaintiff to lease the apartment to the tenant for whose benefit the guarantee was made.
Defendant’s contention that she is not liable pursuant to the guarantee rests on her contention that her purported termination of the guarantee was effective for all purposes as of the end of July 14, 2002, the last day of the lease term. But Levine does not establish an unfettered right on the part of a guarantor in defendant’s position to revoke the guarantee as of any date of its choice. Rather, Levine stated that “[w]e agree with the Appellate Term that where, as here, ‘a guaranteed contract has no definite time to run, an uncompensated guarantor may revoke and end its future liability by reasonable notice to the principal’ ” (256 AD2d at 200 [citations omitted and emphasis added]).
In Levine, the Court showed that notice of revocation had been given in time for the landlord to have extracted herself from the landlord-tenant relationship without damage, had she *808 chosen to. In this case, by contrast, notice of the purported revocation of the guarantee was given at a time when it was too late for plaintiff to change its position accordingly to avoid a risk it had been unwilling to assume in the first place without the guarantee. Such notice is manifestly not “reasonable,” as that term was used in Levine.

 Defendant questions whether a lease provision purporting to set the amount to be paid for use and occupancy in the event of a holdover is enforceable. Although it would appear to be an enforceable liquidated damages provision, the court need not decide that question in deciding this motion. In any event, the fact that an obligation to pay for any postlease occupancy was spelled out in the lease makes it crystal clear that the risk of liability based on a holdover was one encompassed in defendant’s guarantee.