[929 NYS2d 286]

In the Matter of DOMINIC CASAMENTO, Respondent, v LUIS JUAR-
EGUI, Appellant.

Second Department, September 13, 2011

### APPEARANCES OF COUNSEL

*Steven De Castro*, New York City, for appellant.
*Santo Golino*, New York City, for respondent.

### OPINION OF THE COURT

ANGIOLILLO, J.

Real Property Law § 234, which governs residential leases, establishes an implied covenant providing a tenant with the right to recover an attorney's fee incurred in the successful defense of a summary proceeding to recover possession of a leasehold where the parties' lease provides for the landlord's recovery of an attorney's fee if successful in such litigation. The appeal before us concerns a tenant who successfully defended such a summary proceeding in the Civil Court, but was denied an award of an attorney's fee on his motion pursuant to Real Property Law § 234. The Appellate Term for the 2d, 11th, and 13th Judicial Districts (hereinafter the Appellate Term) affirmed the order of the Civil Court, holding that the subject provision in the parties' lease did not trigger the statutorily implied covenant in the tenant's favor (26 Misc 3d 136[A], 2010 NY Slip Op 50154[U] [2010]). We disagree with that view, and reverse the order of the Appellate Term, taking this opportunity to examine

and reconcile an apparent conflict among the courts with respect to similarly worded lease provisions. We caution that the outcome of any claim pursuant to Real Property Law § 234 depends upon an analysis of the specific language of the lease provision at issue in each case.

## Factual and Procedural Background

Luis Juaregui (hereinafter the tenant) entered into a lease for an apartment in Queens in a building owned by Dominic Casamento (hereinafter the landlord).[1] Under paragraph 7 of the lease, the tenant is permitted to make alterations only after obtaining the landlord's "prior written consent." Under paragraph 10 of the lease, the tenant is liable for damages sustained and expenses incurred by the landlord "relating to any claim arising from any act or neglect of" the tenant. Paragraph 16 of the lease contains detailed provisions regarding the landlord's remedies in the event of the tenant's default. In pertinent part, that paragraph provides:

"A. Landlord must give Tenant written notice of default stating the type of default. The following are defaults and must be cured by Tenant within the time stated: . . .

"(5) Failure to comply with any other term or Rule in the Lease, 10 days.

"If Tenant fails to cure the default in the time stated, Landlord may cancel the Lease by giving Tenant a cancellation notice . . . Tenant continues to be responsible as stated in this Lease. . . .

"C. If (1) the Lease is cancelled . . . , Landlord may, in addition to other remedies, take any of the following steps: (a) peacefully enter the Apartment and remove Tenant and any person or property, and (b) use eviction or other lawsuit method to take back the Apartment.

---

1. The lease at issue covered a one-year term commencing May 1, 1993. Although that term had expired prior to the events described herein, the parties do not dispute they are bound by the terms of the written lease. Where, as here, the tenant continues to reside in the premises after the expiration of the lease term, the tenancy impliedly continues on the same terms as those in the original instrument for as long as the tenant remains in possession (*see City of New York v Pennsylvania R.R. Co.*, 37 NY2d 298, 300 [1975]; *Logan v Johnson*, 34 AD3d 758, 759 [2006]; *McClenan v Brancato Iron & Fence Works*, 282 AD2d 722 [2001]).

"D. If this Lease is cancelled, or Landlord takes back the Apartment, the following takes place:

"(1) Rent and added rent for the unexpired Term becomes due and payable.

"(2) Landlord may relet the Apartment and anything in it . . . Tenant stays liable and is not released except as provided by law.

"(3) Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, brokers fees, cleaning and repairing costs, decorating costs and advertising costs."

The term "added rent," as set forth in paragraph 16, is defined in paragraph 3 of the lease as "other charges to Landlord under the terms of this Lease" which the tenant "may be required to pay."

On March 10, 2007, the landlord served the tenant with a notice to cure, alleging that the tenant violated paragraphs 7 and 10 of the lease "by physically assaulting landlord and making alterations to the bathroom and kitchen without the landlord's prior written consent." The notice advised that, in the event of the tenant's failure to cure by March 22, 2007, the landlord would elect to terminate the tenancy in accordance with applicable law. The notice further advised: "pursuant to your lease you are responsible for legal fees incurred by the landlord with regard to the preparation and service of this Notice to Cure and any and all work done prior to and subsequently thereto, based upon your default under the lease." On March 29, 2007, the landlord served a notice of termination of the lease effective April 12, 2007, citing the tenant's failure to cure, and advising the tenant that failure to quit would result in the commencement of appropriate proceedings to recover possession.

On April 18, 2007, the landlord commenced this summary holdover proceeding in the Civil Court, Queens County, alleging that the tenant had continued in possession without the landlord's permission beyond the date set forth in the notice of termination. The tenant filed an answer alleging that he had not assaulted the landlord, but that the landlord had intentionally assaulted him with a truck and was facing criminal charges.

With respect to the alleged alterations to the apartment, the tenant claimed that, in 1999, the apartment sustained damage from a flood, and that the landlord refused to make repairs for seven years, resulting in dangerous and unhealthy conditions. In 2006 the tenant allegedly asked for and received the landlord's oral permission to undertake the repairs, and the landlord inspected the work and expressed satisfaction with it. Further, the tenant counterclaimed for rent abatement under a theory of breach of warranty of habitability and sought dismissal of the landlord's petition to recover possession of the leasehold and an award of costs and a reasonable attorney's fee.

The Civil Court (Katz, J.) deemed the issue of assault not within its jurisdiction and, in October 2007, held a trial on the sole issue of the tenant's alleged unauthorized alterations. On February 7, 2008, the Civil Court issued a written decision and order. According to the Civil Court's summary of the testimony, the landlord denied that he had failed to make necessary repairs, and claimed that he learned from a neighbor that the tenant was undertaking a complete renovation of the bathroom, not merely repairs, without his permission. The tenant testified to the contrary that, in 1999, the bathroom was completely damaged by a leak from above, and that the landlord had ignored several requests to make repairs. The Civil Court took judicial notice of a prior proceeding between the parties from 2001, which established the existence of 10 building code violations, including damage to the walls and ceiling of the bathroom and kitchen. The Civil Court found that the tenant "had conditions in his apartment in 2001 that the landlord failed and refused to repair and, over the passage of time, the conditions became so bad the tenant had no choice but to do the repairs himself." Accordingly, the Civil Court dismissed the landlord's petition, holding that "[t]he landlord cannot use his own failure to make repairs as a sword to evict the tenant."

In the same month that the Civil Court issued its determination, February 2008, the tenant commenced a separate action against the landlord in the Supreme Court, Queens County, to recover damages for personal injuries he allegedly sustained as a consequence of the landlord's assault. In July 2008 the parties reached a settlement, pursuant to which the landlord paid the tenant the sum of $10,000, and the tenant agreed to release the landlord "from the *personal injury and assault action only* of Index Number 4885/2008 filed in Supreme Court, Queens County" and "[i]n particular for *bodily injuries* sustained on February 27, 2007."

In November 2008 the tenant filed a motion in the Civil Court, seeking an award of an attorney's fee. The tenant cited Real Property Law § 234, contending that paragraph 16 of the parties' lease triggered the implied statutory covenant in his favor. The landlord opposed the motion, contending that paragraph 16 simply permitted him to recoup the costs of re-renting the apartment in the event of the tenant's default, not the costs of instituting a summary holdover proceeding and, thus, the implied covenant in favor of the tenant under section 234 did not arise.[2] In reply, the tenant argued that the landlord's demand for an award of an attorney's fee in his notice to cure should be deemed an admission that the parties' lease authorized such an award. The landlord argued that, to the contrary, the notice to cure did not create a right to an award of an attorney's fee beyond the lease provision, which authorized an award of an attorney's fee only in the specific situation, not applicable here, where the landlord relets the apartment.

On January 27, 2009, the Civil Court (Badillo, J.) denied the tenant's motion, holding that the language of paragraph 16 (D) (3) of the lease "is triggered by the vacatur of the apartment and the expenses involved in a reletting" and that the "lease does not contain any language for legal fees for broad breach circumstances." The tenant appealed from that order and, on January 29, 2010, the Appellate Term affirmed, writing:

> "After prevailing in this holdover summary proceeding, tenant sought an award of attorney's fees based on Real Property Law § 234 and paragraph 16 (D) of the lease, which provides that the landlord may deduct his costs of getting possession and re-renting the apartment, including attorney's fees, from the rents received upon a reletting following a cancellation of the lease. As the subject clause 'is not the type of provision covered by Real Property Law § 234' (*Oxford Towers Co., LLC v Wagner*, 58 AD3d 422, 423 [1st Dept 2009]; *see Madison-68 Corp. v Malpass*, 65 AD3d 445 [1st Dept 2009]; *Hamilton v Menalon Realty, LLC*, 14 Misc 3d 13 [App Term, 2d

---

2. On appeal to this Court, the landlord has abandoned his previous argument, made to the Civil Court, that he was prejudiced by the tenant's belated motion for an award of an attorney's fee, made nine months after the conclusion of the summary proceeding, because, at the time that the landlord was negotiating the settlement in the Supreme Court, he believed the tenant would receive nothing further in the summary proceeding.

& 11th Jud Dists 2006]; *Morris v Flaig,* 511 F Supp 2d 282 [ED NY 2007]; *see also Gannett Suburban Newspapers v El-Kam Realty Co.,* 306 AD2d 312 [2d Dept 2003]; *but see Stephen LLC v Zucchiatti,* 24 Misc 3d 1203[A], 2009 NY Slip Op 51245[U] [Civ Ct, NY County 2009]), the Civil Court's order denying tenant's motion for attorney's fees is affirmed" (*Casamento v Juaregui,* 26 Misc 3d 136[A], 2010 NY Slip Op 50154[U], *1 [2010]).

The Appellate Term denied the tenant's motion for leave to reargue or, in the alternative, for leave to appeal to this Court, and we subsequently granted the tenant's motion for leave to appeal.

## Analysis

Under the well-established general rule in New York, "attorneys' fees are deemed incidental to litigation and may not be recovered unless supported by statute, court rule or written agreement of the parties" (*Flemming v Barnwell Nursing Home & Health Facilities, Inc.,* 15 NY3d 375, 379 [2010]; *see Hooper Assoc. v AGS Computers,* 74 NY2d 487, 491 [1989]). In the appeal before us, the tenant bases his request for an award of an attorney's fee on the interplay between paragraph 16 of the parties' lease and section 234, which provides, in pertinent part:

"Whenever a lease of residential property shall provide that in any action or summary proceeding the landlord may recover attorneys' fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease, or that amounts paid by the landlord therefor shall be paid by the tenant as additional rent, *there shall be implied in such lease a covenant by the landlord* to pay to the tenant the reasonable attorneys' fees and/or expenses incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease or in the successful defense of any action or summary proceeding commenced by the landlord against the tenant arising out of the lease" (Real Property Law § 234 [emphasis added]).

"This statute established the reciprocal right of a tenant to recover an attorney's fee and expenses when the same benefit is

bestowed upon the landlord under the parties' lease" (*Kuttas v Condon*, 290 AD2d 492, 493 [2002]). The statutory language plainly includes two kinds of lease provisions within its ambit, either of which will trigger the implied covenant in favor of the tenant: a provision that (1) "in any action or summary proceeding the landlord may recover attorneys' fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease" or a provision that (2) "amounts paid by the landlord [for an attorney's fee] shall be paid by the tenant as additional rent" (Real Property Law § 234).

Section 234, as initially enacted in 1966, governed leases of residential property in New York City, and it was subsequently amended in 1969 to encompass residential leases in the entire state (*see* L 1966, ch 286, amended by L 1969, ch 297). The Court of Appeals expounded upon the genesis and legislative purpose of section 234 in *Matter of Duell v Condon* (84 NY2d 773 [1995]). Discussing legislative materials from 1966, the Court stated that "[t]he remedial nature of the Legislature's action to equalize the power of landlords and tenants is evident from both the language of the statute as well as historical documents (*see* Bill Jacket, L 1966, ch 286)" (*id.* at 783). This remedial purpose is also evident in the legislative materials from the 1969 amendment, where the bill sponsor noted,

> "given the disparity of bargaining power normally existing between the parties, it has become common practice for landlords to prepare leases and present them to tenants on a take-it or leave-it basis . . .

> "The proposed legislation will cure this inequity and insure uniform treatment of all tenants residing in New York State" (Mem of Senator John R. Dunne in Support of L 1969, ch 297, 1969 NY Legis Ann at 357).

As the Court of Appeals explained:

> "The overriding purpose of Real Property Law § 234 was to level the playing field between landlords and residential tenants, creating a mutual obligation that provides an incentive to resolve disputes quickly and without undue expense. The statute thus grants to the tenant the same benefit the lease imposes in favor of the landlord. An additional purpose, particularly relevant in cases in which the

tenancy is governed by the emergency rent laws, is to discourage landlords from engaging in frivolous litigation in an effort to harass tenants, particularly tenants without the resources to resist legal action, into terminating legal occupancy" (*Matter of Duell v Condon*, 84 NY2d at 780).

Thus, section 234 "contains no limitation, stating that its terms apply '[w]henever a lease of residential property' includes an attorney's fees and expenses clause in favor of the landlord" (*id.* at 783).

Here, we are called upon to determine whether paragraph 16 of the parties' lease gives rise to the implied covenant in the tenant's favor pursuant to section 234. Initially, applying principles of contract interpretation, we discern the meaning of paragraph 16 by reading all clauses of this provision together and in context with the lease as a whole to determine its purpose and intent (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *Bailey v Fish & Neave*, 8 NY3d 523, 528 [2007]; *J.W. Mays, Inc. v Snyder Fulton St., LLC*, 69 AD3d 572, 573 [2010]). Subparagraph 16 (A) (5) recites that, if the tenant fails to cure the default in the time stated, the landlord may cancel the lease and the tenant "continues to be responsible as stated in this Lease." Under subparagraph 16 (C) (1) (b), if the lease is cancelled, the landlord "may, in addition to other remedies . . . use eviction or other lawsuit method to take back the Apartment." Under subparagraph 16 (D) (1), if the landlord "takes back the Apartment, . . . [r]ent and added rent for the unexpired Term becomes due and payable." The term "added rent" is defined in paragraph 3 as "other charges to Landlord under the terms of this Lease" which the tenant "may be required to pay." Further, under subparagraph 16 (D) (2), if the lease is cancelled, the landlord "may relet the Apartment" and the tenant "stays liable and is not released except as provided by law." Finally, under subparagraph 16 (D) (3), "[a]ny rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees."

We interpret this remedial scheme to permit the landlord to recoup any attorney's fee he incurs in an eviction proceeding against a defaulting tenant under circumstances in which the premises are relet prior to the defaulting tenant's satisfaction of

outstanding rent and added rent. The landlord's entitlement to an attorney's fee in the eviction proceeding falls within the definition of "added rent" in such circumstances because it is a charge which the tenant "may be required to pay," albeit indirectly. Throughout the eviction process, the tenant remains liable for rent and added rent due for the remainder of the unexpired term, and if the apartment is relet during that term, the landlord is potentially made whole for all legal fees and expenses incurred in "getting possession" of the apartment by lawsuit, over and above the rent and added rent still due and owing from the tenant.

Given this interpretation of paragraph 16, we must determine whether it triggers the implied covenant in the tenant's favor under section 234. While paragraph 16 is not an all-inclusive attorney's fee provision, it does permit the landlord, under the circumstances described, to recover an attorney's fee incurred in litigation occasioned by the tenant's failure to perform an obligation set forth in a covenant of the lease. Paragraph 16, thus, literally fits within the language of the first prong of section 234, since it does "provide that in any action or summary proceeding the landlord may recover attorneys' fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease."[3] Use of the permissive word "may" in section 234 indicates that an attorney's fee provision in the lease will trigger the implied covenant even if it does not mandate the landlord's full recovery of his or her attorney's fee under every set of circumstances in which the parties litigate the tenant's alleged default under the lease. The word "recover" in section 234 indicates that the triggering lease provision must simply establish a method by which the landlord may recover his or her attorney's fee; the lease provision need not expressly require a court order awarding the

**3.** We decline to reach and determine whether paragraph 16 also constitutes the second type of lease provision whereby the landlord's attorney's fee "shall be paid by the tenant as additional rent" (Real Property Law § 234). Under paragraph 16, the tenant indirectly pays the landlord's attorney's fee by receiving no credit for that amount against the tenant's outstanding obligation when the landlord receives rents from rerental. The lease in *Matter of Duell v Condon* (84 NY2d 773 [1995]) contained a direct payment provision whereby the landlord's attorney's fee "shall be deemed additional rent." While the parties in that case did not raise the issue of whether that language was sufficient to trigger the implied covenant, the Court of Appeals quoted only the first prong of section 234 in observing that the parties' lease provision "entitl[ed] the landlord to assess attorneys' fees and expenses against the tenant" (*id.* at 778).

attorney's fee or the tenant's direct payment of the fee to the landlord. Moreover, where, as here, the tenant seeks the benefit of the implied covenant after successfully defending a proceeding alleging his or her breach of the lease, nothing in section 234 requires the court, in determining the tenant's motion, to engage in a speculative analysis of hypothetical circumstances to determine if the landlord would have, in fact, recovered his or her attorney's fee under the subject lease provision had he or she prevailed in the lawsuit. Accordingly, paragraph 16 is an attorney's fee provision in favor of the landlord which satisfies the first prong of section 234 and, thus, triggers the implied covenant in favor of the tenant.

Our conclusion is supported by the "basic tenet of statutory construction that the 'mischief to be corrected' and the spirit and purpose of the statute must be considered" in construing the statutory language (*Nestor v McDowell*, 81 NY2d 410, 414 [1993], quoting *Matter of Toomey v New York State Legislature [Assembly]*, 2 NY2d 446, 448 [1957]). The remedial purpose of section 234 is to "level the playing field" (*Matter of Duell v Condon*, 84 NY2d at 780), " 'redress the recognized inequality at the bargaining table between landlord and tenant, and . . . protect the public interest involved' " (*Kuttas v Condon*, 290 AD2d at 493, quoting *Cier Indus. Co. v Hessen*, 136 AD2d 145, 150 [1988]). As the sponsor of the bill that became section 234 stated, it was intended that

> "by giving tenants the potential right to recover such legal expenses, [section 234] would act as a deterrent to overreaching practices by landlords who now rely upon their tenants' inability to bear the cost of legal proceedings required to redress [the] landlord's improper acts" (Mem of Senator Harrison J. Goldin, Bill Jacket, L 1966, ch 286, at 1; *see Matter of Duell v Condon*, 84 NY2d at 784).

The implication of a covenant in favor of the tenant here is consistent with the Legislature's remedial purpose of effecting mutuality in landlord-tenant litigation and helping to deter frivolous and harassing litigation by landlords who wish to evict tenants. It is no secret that landlords have a financial motivation to terminate a tenancy where the possibility exists of re-renting the premises at a higher rate (*see Matter of Duell v Condon*, 84 NY2d at 781 ["the landlords had an obvious incentive to terminate" a rent-controlled tenancy]). The lease in the record before us consists of a preprinted form which is generally in

use throughout New York. Paragraph 16 provides the landlord with a mechanism to institute an eviction proceeding and regain possession of an apartment prior to the expiration of the lease term, immediately rerent at a higher rate, and recover his or her attorney's fees and other expenses of litigation from amounts received from the rerental, while the defaulting tenant remains liable for the entire outstanding balance of rent and added rent due for the unexpired term. Under such circumstances, a landlord has nothing to lose in instituting eviction proceedings, even if the factual basis for such proceedings is frivolous, unless the landlord faces the prospect of having to pay the tenant's attorney's fee if the tenant prevails.

Significantly, in 1992, the Appellate Division, First Department, construed a similarly worded lease provision to give rise to the implied covenant (*see Bunny Realty v Miller*, 180 AD2d 460 [1992]). A portion of the lease provision at issue in that case was quoted in the reported decision as follows:

> "Any rents received by the Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amount Tenant owes under this lease. Landlord's expenses include the cost of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, brokers fees, cleaning and repairing costs, decorating costs and advertising costs" (*id.* at 462).

The First Department reversed an order of the Appellate Term, First Department, which denied the tenant's application for an award of an attorney's fee, holding, in pertinent part:

> "Thus, while the subject lease clearly permits the landlord to recover legal fees for obtaining possession of the apartment, the Appellate Term has interpreted the section to mean that because it does not specifically contain the words 'due to the tenant's default', it somehow limits the latter's reciprocal rights thereunder. Yet, this clause is sufficiently broad to allow the landlord to procure counsel fees for any reason, including breach of lease, so long as the ultimate result would be to take possession or re-rent the apartment. Acceptance of the Appellate Term's argument in this respect would enable, if not encourage, landlords to undermine entirely the effectiveness of Real Property Law § 234 through artful draftsmanship" (*id.* at 462-463).

In considering the precedential import of cases such as *Bunny Realty*, we are cognizant of the limited factual information given in the reported decisions; frequently only a portion of the lease provision at issue is quoted or paraphrased. A proper determination under section 234 must depend upon review of the complete lease provision before the court. With that caveat in mind, the First Department's reasoning in *Bunny Realty* is persuasive and perhaps even more forcefully salient to the case before us than it was to the facts presented there. Unlike the Appellate Term's interpretation of the lease provision in *Bunny Realty*, here, paragraph 16 specifically covers an attorney's fee incurred by a landlord due to the tenant's default. The landlord here is authorized to cancel the lease due to the tenant's default and, upon cancellation, may institute a summary proceeding to repossess. The landlord then may recoup the attorney's fee incurred in the litigation by rerenting, in the same manner as the quoted portion of the lease provision in *Bunny Realty*. To deny the tenant's motion pursuant to section 234 simply because paragraph 16 does not include a more direct method for the landlord's recovery of his attorney's fee would only reward "artful draftsmanship" and undermine the salutary purpose of section 234 (*id.* at 463).

More recently, the First Department issued decisions in two cases which some courts have interpreted as being at odds with the holding in *Bunny Realty*. In the order under review on this appeal, the Appellate Term cited these cases for the proposition that paragraph 16 "is not the type of provision covered by Real Property Law § 234" (*Oxford Towers Co., LLC v Wagner*, 58 AD3d 422, 423 [2009]; *see Madison-68 Corp. v Malpass*, 65 AD3d 445 [2009]). The landlord contends that *Oxford Towers* and *Madison-68* "effectively overruled" *Bunny Realty*, which should no longer be followed. Contrary to the landlord's contention, *Oxford Towers* and *Madison-68* did not expressly overrule *Bunny Realty*, nor even cite it. In the first of these two cases, *Oxford Towers*, the plaintiff landlord commenced an action to rescind a 1995 contract under which the landlord agreed to extend renewal leases to the tenants under the rates afforded by the rent stabilization laws, even if the apartments were subsequently deregulated. The tenants prevailed in dismissing the cause of action seeking rescission, but the landlord prevailed on a separate cause of action to recover use and occupancy under the renewal leases. The First Department held, in pertinent part:

"The motion court properly denied defendants' [tenants'] request for attorneys' fees. Paragraph 23 (D) (3) of the lease, on which defendants rely, provides that in the event the lease is cancelled, the landlord may re-rent the apartment, and any such new rent received 'shall be used first to pay Landlord's expenses . . . [which] expenses include the costs of getting possession and re-renting the Apartment, including . . . reasonable legal fees.' This is not the type of provision covered by Real Property Law § 234. Furthermore, the action arises out of the 1995 agreement, not the lease (*cf. Peck v Wolf*, 157 AD2d 535, 536 [1990] . . . )" (*Oxford Towers*, 58 AD3d at 423).

As quoted above, the small portion of the lease quoted in *Oxford Towers* appears to be nearly identical to the portion quoted in *Bunny Realty*. However, *Oxford Towers* was not the kind of action governed by section 234. The tenants did not incur their attorney's fee "as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease or in the successful defense of any action or summary proceeding commenced by the landlord against the tenant *arising out of the lease*" (Real Property Law § 234 [emphasis added]). Rather, as the First Department noted, "the action arises out of the 1995 agreement, not the lease" and, thus, the tenants incurred the attorney's fee in their successful defense of the landlord's cause of action to rescind the 1995 agreement (*Oxford Towers*, 58 AD3d at 423). Moreover, the Court relied upon a case in which "none of the requisite statutory elements contained in section 234 is present" because it was a "declaratory judgment action seeking a determination of whether or not the apartment was maintained as a primary residence" (*Peck v Wolf*, 157 AD2d 535, 536 [1990]). Accordingly, the statement in *Oxford Towers* (58 AD3d at 423) that the lease provision at issue was "not the type of provision covered by Real Property Law § 234" cannot be construed literally to hold that any lease provision containing the language quoted in the First Department's decision and order in *Oxford Towers* is, as a matter of law, insufficient to trigger the implied covenant under section 234. To the extent that the phrase can be so interpreted, it constitutes dicta which we decline to follow.[4]

In the subsequently decided case, *Madison-68*, the First

---

4. In its brief filed with the First Department, the landlord in *Oxford Towers* argued that section 234 was inapplicable because the action arose out of

Department stated that "it was error for the J.H.O. to determine that [the tenants] were entitled to an award of attorneys' fees. In [*Oxford Towers*], this Court held that an identical lease provision was not covered by Real Property Law § 234" (*Madison-68*, 65 AD3d at 445).[5] Thus, while it appears that the Court in *Madison-68* considered a lease provision identical to that in *Oxford Towers*, which, in turn, contained some language similar to the portion of the lease provision quoted in *Bunny Realty*, the Court did not expressly overrule *Bunny Realty*, nor even cite that case.

The holdings in *Oxford Towers* and *Madison-68*, however, have led some courts to conclude that *Bunny Realty* is not good law. Although one Civil Court Judge sitting in the First Department has concluded that *Bunny Realty* has not been overruled (*see Stephen LLC v Zucchiatti*, 24 Misc 3d 1203[A], 2009 NY Slip Op 51245[U], *3 [2009] ["(w)ithout a clear signal from the Appellate Division, First Department, that it has decided to undo 17 years of precedent and one of its more prominent decisions regarding attorneys' fees, this court will continue to follow *Bunny*"]), the Appellate Term, First Department, declined to follow *Bunny Realty*:

> "[T]he attorneys' fees provision in the subject initial written lease agreement did not trigger the reciprocal right to attorneys' fees pursuant to Real Property Law § 234 [citing *Oxford Towers* and *Madison-68*]. To the extent [*Bunny Realty*] suggests a contrary conclusion, we decline to apply it" (*303 E. 37th Sponsors Corp. v Goldstein*, 29 Misc 3d 131[A], 2010 NY Slip Op 51880[U], *1 [2010]).

the agreement, not the lease. The tenants argued that, since one of the causes of action in the complaint, albeit a dismissed cause of action, was based upon an alleged breach of the lease, section 234 applied. Neither party cited to or argued the applicability of *Bunny Realty*.

5. Again, *Oxford Towers* arose out of a nonlease agreement, not a lease. As revealed in the parties' briefs in *Madison-68*, the primary point of contention was whether the tenants were entitled to an award of an attorney's fee notwithstanding the fact that the landlord won partial judgment. The tenants cited *Bunny Realty* only for the proposition that a partial judgment to recover rent in favor of the landlord does not preclude the tenant's recovery of an attorney's fee as a prevailing party. The landlord there argued that the subject attorney's fee provision was not for a general breach of lease claim to recover unpaid rent, but was only for repossessing and rerenting the premises. Further, the landlord merely replied to the tenants' prevailing-party argument as to *Bunny Realty*. Neither party discussed the apparent conflict between *Oxford Towers* and *Bunny Realty*.

Moreover, other cases which have not expressly cited *Bunny Realty* have held that lease provisions permitting the landlord to recover an attorney's fee incurred as an expense of reletting an apartment are not subject to the implied covenant of section 234 (*see Morris v Flaig*, 511 F Supp 2d 282, 303 [2007]; *Cross v Zyburo*, 185 AD2d 967, 968-969 [1992]; *Fragiacomo v Pugliese*, 11 Misc 3d 96 [2006]; *Bender v Niebel*, 11 Misc 3d 136[A], 2006 NY Slip Op 50502[U] [2006]). To the extent that the subject lease provisions in those four cases can be understood, based upon the portions which are quoted or paraphrased in the reported decisions, they were all limited to the attorney's fee incurred by a landlord in reletting only, unlike paragraph 16 here, which includes an attorney's fee incurred in obtaining possession by legal process.

To further complicate matters, in the order dated January 29, 2010, the Appellate Term relied upon our decision in *Gannett Suburban Newspapers v El-Kam Realty Co.* (306 AD2d 312 [2003]) to support its conclusion that section 234 does not govern lease provisions like paragraph 16 here. *Gannett Suburban* was a breach of contract action based on a commercial lease in which Gannett Suburban Newspapers was the tenant and El-Kam Realty was the landlord. Because a residential lease was not involved, section 234 was not applicable and we did not cite it. We held, in pertinent part:

> "[T]he Supreme Court properly denied that branch of El-Kam's [the landlord's] motion which was for summary judgment on its fourth counterclaim [for an attorney's fee] . . . We note that section 27.01 of the lease, on which El-Kam relies, only permits El-Kam to deduct its attorney's fee when calculating any credit to which Gannett [the tenant] would be entitled if El-Kam relets the premises. Notwithstanding the foregoing, the lease expressly provides that El-Kam is not obligated to mitigate damages by reletting" (*id.* at 314 [citations omitted]).

Upon an initial reading, it would appear that the lease provision paraphrased in *Gannett Suburban* bore some similarity to paragraph 16 with respect to the landlord's method of recouping an attorney's fee. However, the lease at issue in that case was a commercial lease, and a commercial tenant does not have an implied right to an attorney's fee even where the commercial lease contains such a clause in the landlord's favor (*see Reade v Stoneybrook Realty, LLC*, 63 AD3d 433 [2009]). Moreover, to the extent that, notwithstanding its commercial nature, the courts

in landlord-tenant cases are looking to the *Gannett Suburban* case for guidance in interpreting the meaning of language in a lease, we caution that all of the relevant provisions in the commercial lease at issue in that case were not quoted or paraphrased in the reported decision. Specifically, it was not set forth in the reported decision whether the landlord there had the right to deduct an attorney's fee incurred merely as a cost of reletting, or, like paragraph 16 here, an attorney's fee incurred in litigation to evict the tenant on the ground of the tenant's default. Thus, *Gannett Suburban* has no applicability to the issue here, namely, whether the particular language of paragraph 16 gives rise to the implied covenant in the tenant's favor pursuant to section 234. Accordingly, in the case at bar, and in *Hamilton v Menalon Realty, LLC* (14 Misc 3d 13 [2006]), the Appellate Term applied our holding in *Gannett Suburban* too broadly, and should no longer rely upon it in determining a motion pursuant to section 234 for an award of an attorney's fee.

We further note that the Appellate Term has permitted a landlord to recover an attorney's fee in a holdover proceeding pursuant to a lease provision which was similar to paragraph 16 (*see 490 Owners Corp. v Israel,* 189 Misc 2d 34 [2001]). The same result occurred in the Appellate Term, First Department, which cited *Bunny Realty* and *490 Owners Corp.* in upholding an award of an attorney's fee to a landlord (*see Halle v Adbuljaami,* 24 Misc 3d 143[A], 2009 NY Slip Op 51776[U] [2009]). The incongruous result is that the Appellate Terms in both the First and Second Departments, in cases involving lease provisions similar to paragraph 16 here, have allowed landlords to collect an attorney's fee, but have not allowed tenants to invoke the implied covenant pursuant to section 234 (*compare 303 E. 37th Sponsors Corp. v Goldstein,* 29 Misc 3d 131[A], 2010 NY Slip Op 51880[U] [2010] [against tenant], *with Halle v Adbuljaami,* 24 Misc 3d 143[A], 2009 NY Slip Op 51776[U] [2009] [for landlord]; *and compare Hamilton v Menalon Realty, LLC,* 14 Misc 3d 13 [2006] [against tenant], *with 490 Owners Corp. v Israel,* 189 Misc 2d 34 [2001] [for landlord]). Allowing the landlord but not the tenant to recover an attorney's fee in such circumstances is contrary to the legislative intent of section 234 to level the playing field.

Finally, we again stress that the outcome of every motion for an award of an attorney's fee pursuant to section 234 must be based upon a review of the complete lease provision at issue,

within the context of the lease, in order to discern its meaning and import before that lease provision may be properly analyzed under the statutory mandate regarding the implied covenant in favor of the tenant. Our holding here is based upon the particular language of paragraph 16, which was sufficient to trigger the implied covenant in the tenant's favor pursuant to section 234. Accordingly, the tenant's motion for an award of an attorney's fee should have been granted, and the matter must be remitted to the Civil Court, Queens County, for a hearing on the issue of the amount of the attorney's fee to be awarded.

Consequently, the order dated January 29, 2010, is reversed, on the law, the order of the Civil Court, Queens County, entered January 27, 2009, is reversed, the motion of Luis Juaregui for an award of an attorney's fee is granted, and the matter is remitted to the Civil Court, Queens County, for a hearing, to be held forthwith, to determine the amount of the attorney's fee to be awarded to Luis Juaregui.

COVELLO, J.P., DICKERSON and ROMAN, JJ., concur.

Ordered that the order dated January 29, 2010, is reversed, on the law, with costs, the order of the Civil Court, Queens County, entered January 27, 2009, is reversed, the motion of Luis Juaregui for an award of an attorney's fee is granted, and the matter is remitted to the Civil Court, Queens County, for a hearing, to be held forthwith, to determine the amount of the attorney's fee to be awarded to Luis Juaregui.