[978 NYS2d 213]

GRAHAM COURT OWNER'S CORP., Respondent, v KYLE TAYLOR, Appellant.

First Department, January 21, 2014

**APPEARANCES OF COUNSEL**

*Bierman & Palitz LLP*, New York City (*Mark H. Bierman* of counsel), for appellant.

*Kucker & Bruh, LLP*, New York City (*Nativ Winiarsky* and *Patrick K. Munson* of counsel), for respondent.

**OPINION OF THE COURT**

RENWICK, J.

This appeal concerns a tenant, respondent Kyle Taylor, who successfully defended a holdover proceeding commenced by petitioner, Graham Court Owner's Corp., in which the landlord sought to recover the leasehold on the ground that the tenant breached the lease by making unauthorized alterations to the premises. After a nonjury trial, Civil Court dismissed the holdover proceeding and awarded the tenant attorneys' fees pursuant to Real Property Law § 223-b, based upon a finding that this proceeding was retaliatory in nature. The Appellate Term, however, reversed the award of attorneys' fees, but otherwise affirmed (34 Misc 3d 153[A], 2012 NY Slip Op 50324[U] [2012]). It also rejected the tenant's alternative claim that he is entitled to attorneys' fees pursuant to Real Property Law § 234. We disagree with that view, and modify the order of the Appellate Term, taking this opportunity to examine and rec-

oncile an apparent conflict within this Department with respect to whether a similarly worded lease provision, which permits a landlord to recover attorneys' fees for re-renting an apartment after prevailing in a holdover proceeding, is adequate to invoke the reciprocal mandate of Real Property Law § 234.

The history of this landlord-tenant relationship had an unauspicious start. In May 2004, the tenant and landlord entered into a rental lease for $2,200 a month, for an unregulated apartment in Manhattan. In October 2005, however, the tenant filed a rent overcharge complaint with the New York State Division of Housing and Community Renewal (DHCR), claiming that his $2,200 rent was an overcharge because he was never made aware that the apartment was subject to the Rent Stabilization Law and Code when he took occupancy. In opposition, the landlord claimed that the apartment had become deregulated because $60,000 in renovations were performed to the apartment before the tenant took occupancy. In response, the tenant submitted proof that he—not the landlord—performed renovation work at the apartment.[1] In January 2007, DHCR found that there had been an overcharge and that the apartment remained rent-regulated. Supreme Court dismissed the landlord's CPLR article 78 petition challenging DHCR's determination, and this Court affirmed the dismissal.[2]

The travails between the tenant and the landlord did not end there. Subsequently, the landlord accused the tenant of making unauthorized alterations to the apartment. Under paragraph 7 of the lease, the tenant is permitted to make alterations only after obtaining the landlord's "prior written consent." Paragraph 15 of the lease contains detailed provisions regarding the landlord's remedies in the event of the tenant's default. In pertinent part, that paragraph provides:

> "A. Landlord must give Tenant [written] notice of default stating the type of default. The following are defaults and must be cured by Tenant within the time stated: . . .

---

1. The work consisted mostly of electrical work in the kitchen, including replacing wiring, switches, outlets, a distribution panel, ceiling fixtures, and under-counter lighting.

2. This Court found that since DHCR had rejected the landlord's documentation for the claimed improvements, some of which, such as painting, plastering and floor maintenance, did not in any event constitute improvements, the landlord failed to carry its burden of establishing entitlement to a major capital improvement increase (*Matter of Graham Ct. Owners Corp. v Division of Hous. & Community Renewal*, 71 AD3d 515 [1st Dept 2010]).

"IV. Failure to comply with any other term or Rule in the Lease, 10 days.

"If Tenant fails to cure the default in the time stated, Landlord may cancel the Lease by giving Tenant a cancellation notice. . . . Tenant continues to be responsible as stated in this Lease. . . .

"C. If (1) the Lease is canceled . . . , Landlord may, in addition to other remedies, take any of the following steps: (a) peacefully enter the Apartment and remove Tenant and any person or property, and (b) use eviction or other lawsuit method to take back the Apartment.

"D. If this Lease is canceled, or Landlord takes back the Apartment, the following takes place:

"(1) Rent and added rent for the unexpired Term is due and payable.[3]

"(2) Landlord may relet the Apartment and anything in it . . . Tenant stays liable and is not released except as provided by law.

"(3) Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, brokers fees, cleaning and repairing costs, decorating costs and advertising costs."

On March 30, 2007, the landlord served the tenant with a notice to cure, alleging that the tenant violated paragraph 7 of the lease by "installing an entire new electrical system in the kitchen" without the landlord's prior written consent. The notice advised that, in the event of the tenant's failure to cure by April 10, 2007, the landlord would elect to terminate the tenancy in accordance with applicable law. On April 23, 2007, the landlord served a notice of termination of the lease effective May 11, 2007, citing the tenant's failure to cure, and advising the tenant that failure to quit would result in the commencement of appropriate proceedings to recover possession.

---

**3.** The term "added rent," as set forth in paragraph 15, is defined in paragraph 3 of the lease as "other charges [due] to Landlord under the terms of this Lease" which the tenant "may be required to pay."

On May 14, 2007, the landlord commenced this summary holdover proceeding in Civil Court alleging that the tenant had continued in possession without the landlord's permission beyond the date set forth in the notice of termination. In its petition, the landlord sought, among other things, an award of possession of the premises and "legal fees in the amount of $3,000." The tenant filed an answer asserting a defense of retaliatory eviction under Real Property Law § 223-b and counterclaims for attorneys' fees and damages. With respect to the alleged alterations to the apartment, the tenant claimed that the "performance or installation of the alleged work described in the petition [did] not violate the lease between the parties" and that such work "was performed to remedy hazardous conditions existing in the subject premises."

At the nonjury trial, the tenant testified that in April 2004, he went to the office of the landlord and discussed with the landlord's principal, Frankel, electrical improvements that would have to be made in order for him to take the apartment. Frankel told the tenant that he could go into the apartment before the lease began and perform the agreed upon work.[4] The superintendent gave the tenant access to the apartment before the lease commencement date in May 2004. The tenant had an electrician perform the work, leaving the original wiring in the walls and running new wires and installing new switches and outlets on the outside of the walls.

In May 2004, the tenant wrote to the landlord that the work was completed. The tenant enclosed the electrical bill invoices and requested reimbursement and a five year lease extension. In response, on June 9, 2004, a landlord's officer, Becker, came to the apartment and verified the electrical work had been done. Becker told the tenant that he would not be reimbursed but that the landlord would agree to extend the lease to a three-year term.

In a July 2010 order, Civil Court dismissed the holdover proceeding. The court found that since the landlord's agents had specifically authorized the tenant to make the alterations, he had not breached the lease by making those alterations. The court found the tenant's testimony in this regard credible, and it disregarded as "entirely incredible" the testimony of Frankel, who "lied repeatedly and obviously" at trial. The court further

---

4. Frankel, however, testified, inter alia, that he never gave the tenant prior approval to perform electrical work at the apartment.

found that the landlord had commenced the instant proceeding in retaliation for the tenant's successful rent overcharge claim. Finally, the court found that, "[a]lthough [the landlord] correctly points out that the attorneys' fee clause in the lease between these parties is not enforceable under current case law, [the tenant] is entitled to collect his attorneys' fees as part of his damages for retaliatory eviction."

The landlord appealed to the Appellate Term insofar as Civil Court dismissed the proceeding and awarded attorneys' fees to the tenant under Real Property Law § 223-b (5). The tenant cross-appealed from that portion of the order dismissing his claims for attorneys' fees pursuant to Real Property Law § 234 and compensatory damages for "mental anguish" and other emotional injuries pursuant to Real Property Law § 223-b (5). The Appellate Term modified the order of Civil Court to the extent of denying the tenant attorneys' fees under Real Property Law § 223-b, and otherwise affirmed. The Appellate Term found that the landlord was estopped from enforcing the "no alterations provision" of the lease, based upon the tenant's persuasive showing that the landlord's authorized agents expressly consented to the electrical work and the evidence that the landlord, in connection with prior proceedings before DHCR, falsely asserted that its own contractors had effectuated the electrical work. The court added, "We note that the above-cited provision does not meet the requirement that a statute expressly authorize an award of attorneys' fees." Finally, the court found that the arguments raised by the tenant in his cross appeal were lacking in merit. This Court granted leave to the tenant, who appeals solely from the denial of attorneys' fees.

We now find that, having prevailed in his defense of the landlord's holdover proceeding, the tenant is entitled to recover attorneys' fees pursuant to Real Property Law § 234. That section states that when a lease provides for a landlord's recovery of attorneys' fees resulting from a tenant's failure to perform any covenant under a lease, a reciprocal covenant "shall be implied" for the landlord to pay attorneys' fees incurred as a result of either its failure to perform a covenant under the lease or a tenant's successful defense:

> "Whenever a lease of residential property shall provide that in any action or summary proceeding the landlord may recover attorneys' fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease, or that amounts paid by the

landlord therefor shall be paid by the tenant as additional rent, there shall be implied in such lease a covenant by the landlord to pay to the tenant the reasonable attorneys' fees and/or expenses incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease or in the successful defense of any action or summary proceeding commenced by the landlord against the tenant arising out of the lease."

The overriding purpose of the statute is to provide a level playing field between landlords and tenants, by creating a mutual obligation that is an incentive to resolve disputes quickly and without undue expense (*Matter of Duell v Condon*, 84 NY2d 773, 780 [1995]). As a remedial statute, Real Property Law § 234 should be accorded its broadest protective meaning consistent with legislative intent (*see Marsh v 300 W. 106th St. Corp.*, 95 AD3d 560 [1st Dept 2012]; *245 Realty Assoc. v Sussis*, 243 AD2d 29 [1st Dept 1998]). The outcome of any claim pursuant to Real Property Law § 234 depends upon an analysis of the specific language of the lease provision at issue in each case to discern its meaning and import (*see Matter of Casamento v Juaregui*, 88 AD3d 345, 346 [2d Dept 2011]).

In this case, as indicated, the landlord began a holdover proceeding pursuant to paragraph 15 of the lease, predicated upon the factual allegations that the tenant performed unauthorized alterations in the apartment and then failed to cure this default. Specifically, paragraph 15 (A) recites that, if the tenant fails to cure the default in the time stated, the landlord may cancel the lease and the tenant "continues to be responsible as stated in this Lease." Under paragraph 15 (C) (1) (b), if the lease is cancelled, the landlord "may, in addition to other remedies . . . use eviction or other lawsuit method to take back the Apartment." Under paragraph 15 (D) (1), if the landlord "takes back the Apartment, . . . [r]ent and added rent for the unexpired Term is due and payable." The term "added rent" is defined in paragraph 3 as "other charges to Landlord under the terms of this Lease" which the tenant "may be required to pay." Further, under paragraph 15 (D) (2), if the lease is cancelled, the landlord "may relet the Apartment" and the tenant "stays liable and is not released except as provided by law." Finally, under paragraph 15 (D) (3), "[a]ny rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under

this Lease. Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees."

We interpret the remedial scheme of paragraph 15 to permit the landlord, in the event of a lease default by the tenant, to cancel the lease and regain possession of the premises via the means of a summary holdover proceeding, and then recoup the attorneys' fee incurred in the litigation by re-renting the premises. Any new rent received by the landlord after re-renting the apartment would be used first to pay the "Landlord's expenses," including "reasonable legal fees." Paragraph 15, thus, literally fits within the language of Real Property Law § 234, since it does "provide that in any action or summary proceeding the landlord may recover attorneys' fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease" (*see Smith v IG Second Generation Partners, L.P.*, 27 AD3d 265 [1st Dept 2006]).

The dissent, however, argues that Real Property Law § 234 is inapplicable because the "language ['attorneys' fees' as subsumed in the term 'Landlord's expenses'] merely provides for an offset of rents collected in the event of a reletting." We reject the dissent's suggestion that the attorneys' fees scheme falls outside the ambit of Real Property Law § 234 because the landlord can only recover the attorneys' fees indirectly through re-renting. We find such limitations of the award of attorneys' fees of no moment as to whether the clause triggers the reciprocal mandate of Real Property Law § 234.

To be sure, an attorneys' fees clause in a lease may be narrowly tailored to permit fees only under certain circumstances, or for particular types of proceedings. Awards of fees under such provisions should be limited to the situations for which they are provided under the lease. This is true whether the landlord is seeking fees, or whether the tenant is seeking fees pursuant to the reciprocal right to fees under Real Property Law § 234. In such context, what is significant for purposes of Real Property Law § 234 is whether the landlord's right to attorneys' fees is triggered by the tenant's failure to perform a covenant in the lease (*see Duell*, 84 NY2d 773 [since eviction based upon nonprimary residence implicated a lease provision requiring the tenant to vacate upon the expiration or termination of the lease, the tenants were entitled to fees]).

In this case, the dissent cannot seriously dispute that the subject lease provision, paragraph 15, would be triggered by a

breach of the lease covenants. Nor can it be disputed that, had the landlord prevailed in the instant holdover proceeding, it would have been entitled to get possession and re-rent the apartment, and thereby collect its costs, including, but not limited to, reasonable legal fees pursuant to paragraph 15 (D) (3). Indeed, the landlord itself reads this provision as including the right to recover legal fees within the costs of the holdover proceeding as demonstrated by the landlord's inclusion of the relief of attorneys' fees in its petition.

Our interpretation of the remedial scheme of paragraph 15, as triggering the reciprocal mandate of section 234, is supported by our holding in *Bunny Realty v Miller* (180 AD2d 460 [1st Dept 1992]). In that case, this Court held that Real Property Law § 234 applied to a lease provision establishing, like here, that upon the cancellation of the lease, any new rent received by the landlord after re-renting the apartment "shall be used first to pay Landlord's expenses," including "reasonable legal fees" (*id.* at 462). In *Bunny Realty*, the landlord initiated a nonpayment proceeding after the tenant began withholding rent in an attempt to force the landlord to perform mandated services. After a nonjury trial, Civil Court held in favor of the tenant and awarded abatement of rent and attorneys' fees. The relevant portion of the lease provision at issue was as follows:

> "Any rents received by the Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amount Tenant owes under this lease. Landlord's expenses include the cost of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, brokers fees, cleaning and repairing costs, decorating costs and advertising costs" (*id.*).

This Court reversed the order of the Appellate Term, First Department, which denied the tenant's application for an award of attorneys' fees, reasoning, in pertinent part:

> "Thus, while the subject lease clearly permits the landlord to recover legal fees for obtaining possession of the apartment, the Appellate Term has interpreted the section to mean that because it does not specifically contain the words 'due to the tenant's default', it somehow limits the latter's reciprocal rights thereunder. Yet, this clause is sufficiently broad to allow the landlord to procure

counsel fees for any reason, including breach of lease, so long as the ultimate result would be to take possession or re-rent the apartment. Acceptance of the Appellate Term's argument in this respect would enable, if not encourage, landlords to undermine entirely the effectiveness of Real Property Law § 234 through artful draftsmanship" (*id.* at 462-463).

More recently, in *Casamento* (88 AD3d 345 [2011]), the Second Department held that the same paragraph as the one in the lease at issue here (denominated paragraph 16 in the lease at issue in *Casamento*) triggered Real Property Law § 234. The Second Department found that this Court's "reasoning in *Bunny Realty* is persuasive and perhaps even more forcefully salient to the case before us than it was to the facts presented there" (*id.* at 357). As *Casamento* explained: "Unlike the Appellate Term's interpretation of the lease provision in *Bunny Realty*, here, paragraph 16 specifically covers an attorney's fee incurred by a landlord due to the tenant's default" (*id.*). Specifically, the landlord in *Casamento*, like the landlord in this case, was "authorized to cancel the lease due to the tenant's default and, upon cancellation, may institute a summary proceeding to repossess" (*id.*). Thus, the *Casamento* Court stated, "The landlord . . . may recoup the attorney's fee incurred in the litigation by rerenting, in the same manner as the quoted portion of the lease provision in *Bunny Realty*" (*id.*).

The Second Department's analysis of paragraph 16 of the lease in *Casamento* is consistent with our analysis of the similar paragraph (paragraph 15) of the lease at issue in this case, as explained above. Furthermore, we concur with the Second Department's conclusion: "To deny the tenant's motion pursuant to [Real Property Law §] 234 simply because paragraph [15] does not include a more direct method for the landlord's recovery of his attorney's fee would only reward 'artful draftsmanship' and undermine the salutary purpose of section 234" (*id.* at 357, quoting *Bunny Realty*, 180 AD2d at 463).

Indeed, as particularly relevant in this case, where the landlord was found to have engaged in improper retaliation, a contrary conclusion based on the dissent's narrow construction of Real Property Law § 234 would undermine one of the key purposes of Real Property Law § 234. As the Court of Appeals stated in *Duell v Condon* (84 NY2d at 780), "[a]n additional purpose [of section 234] is to discourage landlords from engag-

ing in frivolous litigation in an effort to harass tenants, particularly tenants without the resources to resist legal action, into terminating legal occupancy."

Here, the landlord makes no attempt to distinguish *Bunny Realty* and *Casamento*. Instead, the landlord contends that two recent decisions from this Court (*i.e. Oxford Towers Co., LLC v Wagner*, 58 AD3d 422 [1st Dept 2009], *and Madison-68 Corp. v Malpass*, 65 AD3d 445 [1st Dept 2009]), overruled *Bunny Realty*. Neither case, however, cites *Bunny Realty*. More importantly, *Oxford Towers*, which denied a tenant an award of attorneys' fees, is distinguishable. As this Court noted in *Oxford Towers*, "the action arises out of the 1995 agreement, not the lease" and, the tenants incurred the attorney's fee in their successful defense of the landlord's cause of action to rescind the 1995 agreement (*Oxford Towers*, 58 AD3d at 423). Thus, the attorneys' fees provision was not triggered by a breach of the lease. Under the circumstances, as pointed out by the Second Department in *Casamento*, the statement in *Oxford Towers* that the lease provision at issue was

> " 'not the type of provision covered by Real Property Law § 234' cannot be construed literally to hold that any lease provision containing the language quoted in the First Department's decision and order in *Oxford Towers* is, as a matter of law, insufficient to trigger the implied covenant under section 234" (*Casamento*, 88 AD3d at 358).

We concur with the Second Department that, "[t]o the extent that the phrase can be so interpreted, it constitutes dicta which we decline to follow" (*id.*).

The second case relied upon by the landlord, *Madison-68*, is equally unavailing. In *Madison-68*, this Court tersely stated that "it was error for the J.H.O. to determine that [the tenants] were entitled to an award of attorneys' fees" and that "[i]n *Oxford Towers* . . . , this Court held that an identical lease provision was not covered by Real Property Law § 234" (*Madison-68*, 65 AD3d at 445). However, while it appears that the Court in *Madison-68* considered a lease provision identical to that in *Oxford Towers*, which, in turn, contained some language similar to the portion of the lease provision quoted in *Bunny Realty*, the Court did not expressly overrule *Bunny Realty* or even cite it.

More importantly, to the extent *Madison-68* relies exclusively upon the aforementioned dicta in *Oxford Towers*, this Court's

holding in *Madison-68* has limited precedential value. Indeed, more recently, in *Katz Park Ave. Corp. v Jagger* (98 AD3d 921 [1st Dept 2012]), this Court, in granting attorneys' fees to a landlord, distinguished *Oxford Towers* on the ground that, "[i]n that case, we denied attorneys' fees where the agreement was not a lease and the landlord sought rescission of that agreement" (*id.* at 921-922). Moreover, in support, this Court in *Katz Park Ave.* cited approvingly to *Casamento*, which, as explained above, rejects the dicta in *Oxford Towers* upon which *Madison-68* relies (*id.*).

In short, "while judicial interpretation of similarly worded lease provisions has a long and variegated history" (*354 E. 66th St. Realty Corp. v Curry*, 40 Misc 3d 20, 22 [App Term, 1st Dept 2013], citing *Casamento v Juaregui*, 88 AD3d at 362), we now hold explicitly what was implicit in *Katz Park Ave.* That is, we concur with the Second Department in holding that the type of lease clause at issue here is sufficient "to trigger the implied covenant in the tenant's favor pursuant to [Real Property Law §] 234" (*Casamento*, 88 AD3d at 362). In view of this determination, we see no need to address the tenant's alternative contention that he is entitled to an award of attorneys' fees pursuant to Real Property Law § 223-b.

Accordingly, the order of the Appellate Term, First Department, entered March 1, 2012, which, to the extent appealed from as limited by the briefs, modified an order of the Civil Court, New York County (Jean T. Schneider, J.), entered on or about July 26, 2010, dismissing respondent's claim for attorneys' fees pursuant to Real Property Law § 234, and granting respondent's claim for attorney's fees under Real Property Law § 223-b, to dismiss the claim for attorneys' fee under Real Property Law § 223-b, should be modified, on the law, to grant respondent's claim for attorneys' fees pursuant to Real Property Law § 234, the matter remanded to Civil Court for a hearing to determine the amount of the fees, and otherwise affirmed, without costs.

DeGrasse, J. (dissenting). "Legislative enactments in derogation of common law, and especially those creating liability where none previously existed, must be strictly construed" (*Vucetovic v Epsom Downs, Inc.*, 10 NY3d 517, 521 [2008]). On the basis of this bedrock principle of statutory construction, I dissent because, in my view, the lease that is before this Court provides no predicate for the reciprocal attorneys' fees provision under Real Property Law § 234.

After conducting a nonjury trial, Civil Court ruled in favor of tenant to the extent of dismissing the instant holdover petition, found tenant to be entitled to an award of attorneys' fees under Real Property Law § 223-b but dismissed tenant's claim for attorneys' fees under Real Property Law § 234. The Appellate Term modified the Housing Court's order to the extent of vacating the determination that tenant was entitled to an award of attorneys' fees pursuant to Real Property Law § 223-b. The issue on this appeal is whether attorneys' fees are recoverable under either section of the statute.

Real Property Law § 234 enables tenants who prevail in landlord-tenant disputes to recover attorneys' fees where their leases provide for such recovery by their landlords. The section provides:

> "Whenever a lease of residential property shall provide that in any action or summary proceeding the landlord may recover attorneys' fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease, or that amounts paid by the landlord therefor shall be paid by the tenant as additional rent, there shall be implied in such lease a covenant by the landlord to pay to the tenant the reasonable attorneys' fees and/or expenses incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease or in the successful defense of any action or summary proceeding commenced by the landlord against the tenant arising out of the lease, and an agreement that such fees and expenses may be recovered as provided by law in an action commenced against the landlord or by way of counterclaim in any action or summary proceeding commenced by the landlord against the tenant. Any waiver of this section shall be void as against public policy."

Therefore, under the reciprocal provisions of Real Property Law § 234, a tenant may recover attorneys' fees only where the lease provides for the landlord's recovery of such fees (a) in an action or special proceeding or (b) as additional rent. Neither situation is present here. Instead, the parties' lease provides, in pertinent part:

"15. . . .

"(D) If this Lease is canceled, or Landlord takes back the Apartment, the following takes place:

"(1) Rent and added rent for the unexpired Term is due and payable.

"(2) Landlord may relet the Apartment and anything in it. The reletting may be for any term. Landlord may charge any rent or no rent and give allowances to the new tenant. Landlord may, at Tenant's expense, do any work Landlord reasonably feels needed to put the Apartment in good repair and prepare it for renting. Tenant stays liable and is not released except as provided by law.

"(3) Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. *Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, brokers fees, cleaning and repairing costs, decorating costs and advertising costs.*" (Emphasis added.)

Nothing in the above lease provision provides for tenant's payment of attorneys' fees. The language merely provides for an offset of rents collected in the event of a reletting. Therefore, Real Property Law § 234 is inapplicable.

The majority relies on *Bunny Realty v Miller* (180 AD2d 460 [1st Dept 1992]), in which this Court found that Real Property Law § 234 was applicable, reasoning that a similar reletting expenses provision was "sufficiently broad to allow the landlord to procure counsel fees for any reason, including breach of lease, so long as the ultimate result would be to take possession or re-rent the apartment" (*id.* at 462-463; *see Matter of Casamento v Juaregui*, 88 AD3d 345, 356 [2nd Dept 2011] [quoting this portion of *Bunny Realty*]).

At common law, attorneys' fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule (*see Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491 [1989]). After *Bunny Realty* was handed down, the Court of Appeals decided *Gottlieb v Kenneth D. Laub & Co.* (82 NY2d 457 [1993]) where it held that a statute providing for an award of attorneys' fees should be narrowly construed in light

of New York's adherence to the common-law rule disfavoring any award of attorneys' fees to a prevailing party in litigation (*id.* at 464-465, citing McKinney's Cons Laws of NY, Book 1, Statutes § 301 [a]). " 'The common law is never abrogated by implication, but on the contrary it must be held no further changed than the clear import of the language used in a statute absolutely requires' " (*Gottlieb*, 82 NY2d at 465, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 301 [b]). Because the lease in question does not provide for an award of attorneys' fees, I submit that the majority's interpretation of Real Property Law § 234 as well as our decision in *Bunny Realty* cannot be reconciled with the strict construction standard articulated by the Court in *Gottlieb*. As the majority correctly notes, Real Property Law § 234 is a remedial statute and such statutes are generally construed liberally. However, where, as in this case, "remedial statutes create liability not otherwise existing, or increase common law liability, the rule of liberal construction does not apply, but on the contrary the statute must be followed with strictness" (McKinney's Cons Laws of NY, Book 1, Statutes § 321).

In *Matter of Duell v Condon* (84 NY2d 773 [1995]), the Court stated:

> "The overriding purpose of Real Property Law § 234 was to level the playing field between landlords and residential tenants, creating a mutual obligation that provides an incentive to resolve disputes quickly and without undue expense. The statute thus grants to the tenant the same benefit the lease imposes in favor of the landlord" (*id.* at 780).

The result reached by the majority enables tenant to recover attorneys' fees by virtue of a determination in his favor. At the same time, there can be no doubt that the language of the lease would not have provided for a similar recovery by landlord if it had prevailed. Within the meaning of *Duell*, the mere possibility of landlord's offset of reletting expenses can hardly be considered the "same benefit" as today's outright award of attorneys' fees to tenant. Today's ruling makes for the mutuality of a "heads, I win; tails, you still don't win" coin toss.

I agree with the Appellate Term that there is no basis for an award of attorneys' fees under Real Property Law § 223-b inasmuch as the statute does not explicitly provide for such relief (*see Campbell v Citibank*, 302 AD2d 150, 154 [1st Dept 2003]). For these reasons, I would affirm the order of the Appellate Term.

Moskowitz and Gische, JJ., concur with Renwick, J.; Sweeny, J.P., and DeGrasse, J., dissent in an opinion by DeGrasse, J.

Order of the Appellate Term, First Department, entered March 1, 2012, modified, on the law, respondent's claim for attorneys' fees pursuant to Real Property Law § 234 granted, and the matter remanded to Civil Court for a hearing to determine the amount of the fees, and otherwise affirmed, without costs.